**ROYAL INDEMNITY COMPANY, Appellant,**

v.

**Bob MARSHALL, Jr., Appellee.**

**No. 11174.**

Court of Civil Appeals of Texas.

Austin.

April 15, 1964.

Rehearing Denied May 6, 1964.

House, Mercer, House & Brock, Franklin D. Houser, San Antonio, for appellant.

E. B. Fuller, Arthur Mitchell, Austin, for appellee.

HUGHES, Justice.

This suit was brought by Bob Marshall, Jr., to recover damages caused by fire to three automobiles owned by him, such loss allegedly being covered by a fire insurance policy issued to him·by appellant, Royal Indemnity Company.

The fire occurred on January 15, 1963. The burned building in which appellee's cars were housed was located at 508 South Congress Street in Austin, Texas. This building was not named in the insurance policy. It was not owned or controlled by appellee. Two of the damaged cars had been at this address for more than seven days prior to the fire.

The policy sued on was issued to appellee as an "Automobile Dealer," whose address was stated to be 612 N. Lamar, Austin, Texas. The policy covered automobiles

consigned to or owned by appellee and held for sale or used in his business as an auto- mobile dealer. The policy contained these provisions:

"Named Locations—The insured represents that the specific locations named herein are all of the locations or spaces within locations owned. rented or controlled wholly or in part and used by the insured as places of display or storage of automobiles on the inception date of the policy. The company's limit of liability for each such location shall be as stated herein.

NAMED LOCATIONS

| Limit of Liability | Show Main Sales Location First | Annual Fire Rate | Annual Theft Rate (except Blanket) |
|---|---|---|---|
| $10,000.00 | at 612 N. Lamar | .45 | |
| $ | at | | |
| $ | at | | |
| $ | at | | |
| $ | at | | |
| $ | at | | |

The limit of liability stated for the main sales location shall be inclusive of the limit of liability for automobiles designated in paragraph 1, 'Property Covered,' which are made available for the use of the owner, officers or employees and privately stored at other than the named locations, and the actual cash value of all such automobiles shall be included in the monthly statements of values reported for the main sales location.

UNNAMED LOCATIONS—

(a) The insured shall report to the company any other location owned, rented or controlled wholly or in part by him which he commences to use as a place of display or storage of automobiles. Prior to receiving such report, the company shall not be liable for loss occurring after the first 45 days following the commencement of such use and the company's limit of liability at any such location shall not exceed

$ ————————.

(b) As respects automobiles at locations other than those named herein or in another policy affording the insured insurance against loss covered hereunder or described in paragraph (a) above, the company shall not be liable for loss occurring more than 7 days after liability could first attach as respects any one location and the company's limit of liability at all such other locations shall not exceed

$ ————————."

Shortly after issuance of the above described policy, appellee sold his business located at 612 N. Lamar, that is, he sold his lease and improvements but retained his cars. He moved his cars to his father's place of business at West Avenue and Fifth Street and thereafter conducted his car business from that location.

Mr. John Schuler, an insurance agent, who sold the policy in suit to appellee testified that he observed that appellee's place of business on N. Lamar was being closed and he, after conferring with appellee, endorsed a change of address on the policy from N. Lamar to West and Fifth.

The circumstances under which the damaged cars happened to be at the South Congress address when the fire occurred were testified to by appellee, Mr. Roy Ragland and Mr. Bob Marshall, Sr.

Mr. Marshall, Sr. acquired the building on S. Congress and used it in connection with his car business located at West and Fifth. The building was used for the purpose of repairing and painting cars and preparing them for sale. The trade calls this a "make ready" process. Mr. Ragland was employed by Mr. Marshall, Sr., working for him on a straight salary, full time basis. He was a "body man." When Mr. Marshall acquired the S. Congress building, Mr. Ragland did his work for Mr. Marshall at that location. Mr. Ragland also did "make ready" work for appellee on cars owned by him. This work was done at the S. Congress building after its acquisition by Mr. Marshall, Sr. It was done after "working hours." Mr. Marshall, Sr. knew that Mr. Ragland worked on appellee's cars at the S. Congress building after his day's work for him was over. He had no objection to this arrangement.

Appellee's three cars damaged by fire at the S. Congress building were there, at the time, to be "made ready" by Mr. Ragland.

Trial was to a jury which made these findings: (a) The burned cars were not, as contemplated in the policy of insurance sued on, in storage at 508 S. Congress Avenue (b) The cars were not so on display at such address (c) damages in the sum of $3325.00.

Appellant has twenty points of error the first being that the Trial Court erred in overruling its motion for an instructed verdict based on the ground that more than seven days had elapsed from the date that liability could have attached to the date of the fire loss at an unnamed location. It is appellant's construction of the policy that it is not liable for any loss occurring at 508 S. Congress, an address not named in the policy, which loss occurred more than seven days after the damaged cars were carried there. We do not agree with this construction of the policy. The provisions of the policy upon which this point turns have been copied above. Paragraph (a) under "Unnamed Locations" does not apply because the undisputed evidence is that appellee did not own, rent or control, wholly or in part, the premises at 508 S. Congress where the loss occurred. Paragraph (b) does not apply because the building at 508 S. Congress, where the loss occurred, was not a "location" as that term is used in the policy.

There is evidence that the cars belonging to appellee which were damaged in the fire at 508 S. Congress were not in such place for storage or display but that they were housed there solely for the purpose of making them ready for sale.

"Locations," as used in the policy, refer to locations "used by the insured as places of display or storage of automobiles." (Policy provisions, supra.) Also it is to be noted that the insured is directed to "Show Main Sales Location First."

There are only two purposes for a "location" disclosed in the policy, display and storage. Wherever the word location is found in the policy, we construe it as referring to a place where the insured stored

or displayed his automobiles.[1] It follows that 508 S. Congress was not, as a matter of law, a "location."

Appellant's Motion for an Instructed Verdict was properly denied.

Appellant next jointly briefs points eleven through thirteen which complain of the failure of the Trial Court to submit to the jury three requested special issues which asked the jury to find whether or not each of the damaged cars had been at the 508 S. Congress address for more than seven days prior to the fire.

Under appellant's theory of liability if any one of the cars was at the unnamed South Congress address for more than seven days before the fire, then it is exonerated from liability under paragraph (b) of the policy herein quoted. As previously indicated, we do not agree with construction of the policy. We are of the opinion, however, that the evidence is undisputed that two of the cars had been at 508 S. Congress more than seven days prior to the fire. It was, therefore, unnecessary to submit these issues.

Points four and five are jointly briefed. They complain of the submission of Special Issue No. 1 on the ground that it submits only a question of law. The issue reads: "Do you find from a preponderance of the evidence that the automobiles in question were placed at 508 South Congress in Travis County, Texas, before the fire in question for storage as contemplated by the policy of insurance?"

■ The general rule is that it is the province of the judge to determine the legal effect of unambiguous written instruments, but this rule is subject to the qualification that where it becomes necessary to resort to extrinsic facts and circumstances to ascertain the meaning of technical or peculiar terms used in the writing, then these mat-

ters are for the jury. Texas Law of Evidence, 2d ed., McCormick and Ray, Vol. 1, Sec. 9, Achterberg v. Gillett, 322 S.W.2d 306, El Paso Civ.App., writ ref., n. r. e., 159 Tex. 591, 325 S.W.2d 384.

There was no dispute concerning the facts and circumstances surrounding the presence, and the purpose of their presence, of these three cars at the South Congress address at the time of the fire. Whether or not these facts and circumstances constituted "storage" within the meaning of the policy was, we believe, a question of fact. We overrule these points.

A similar issue (No. 2) was submitted to the jury regarding the meaning of the word "display" as used in the policy. What we have said regarding the issue as to "storage" is applicable here. We, therefore, overrule point nine which is that the issue submits only a question of law.

Point seven is that there were not pleadings to support the submission of Special Issue No. 2.

The pleadings in this case are extremely short and very general. Appellee pleaded that he sustained certain losses by fire and that by reason of the insurance policy issued to him appellant was liable for such losses. Appellant denied that its policy covered these losses. It is our opinion that the matter inquired about in Special Issue No. 2 was within the pleadings. It bore directly on the question of policy coverage.

By its fourteenth point appellant asserts error in the failure of the Trial Court to submit to the jury an issue, as requested, inquiring if the cars in suit "were at the location at 508 S. Congress Avenue as contemplated in paragraph 2, sub-paragraph B of the policy in question?"

■ There was no error in refusing to submit this requested issue. In order to an-

---

1. "As a general rule, words used in one sense in one part of a contract are deemed to have been used in the same sense in another part of the instrument, where there is nothing in the contract to indicate otherwise * * *." 17A. C.J.S. Contracts § 303, p. 150.

swer this question the jury would first have to determine what a "location," as used in the paragraph referred to, meant or included. This was a legal question to be answered by construing the policy as a whole. As construed by the Trial Court and us "location" meant a place for display or storage of the cars. The two issues submitted by the Court inquired about the only facts relevant to the applicability of this paragraph of the policy.

Point ten is that the judgment is contrary to the law. This point is based upon the contention that since at least one of the damaged cars had been at the South Congress address for more than seven days there was no liability. We have previously discussed and overruled this contention.

Points sixteen through nineteen, jointly briefed, complain of the admission in evidence of opinions of witnesses concerning the meaning of the words "storage" and "display" as used in the policy.

The objections to this testimony were that (a) "the contract is in evidence and speaks for itself and it is the best evidence of same" (b) "it invades the province of the jury and also calls for a factual and legal conclusion from the witness, which he is not qualified to give" (c) "it is calling for a man to interpret a written contract" (d) "it's an invasion of the parol evidence rule."

The policy was an automobile dealers' policy. The witnesses were appellee who had been in the car business for a number of years; Mr. Bob Marshall, Sr., who had been in the car business for a number of years; and Mr. E. L. Pulley, a witness for appellant, whose business was appraising damaged automobiles. This witness, on cross examination, testified without objection as follows:

"Q  Now, your experience in the appraisal business, do you feel that you are qualified to discuss the terminology used in the automobile business, both body shop, in re-pair shop, and also sales work, by words that they use?

"A  Yes, sir.

"Q  Using the word 'display,' if a car dealer referred to a car being displayed, do you take that word to mean it is displayed to the public for sale, or that it is back in a shop somewhere being repaired? Is it being displayed while it is being repaired?

"A  I would take it that to display an automobile, I would think it would be open to the view of the public.

"Q  And if you refer in the car business to 'storage of an automobile,' in your opinion is a car that is in the body shop being repaired, is it being stored there or not?

"A  There are two ways to look at that. I don't think you would consider if it was being repaired, that you would consider it being stored. I think if stored, it would be under safekeeping.

"Q  In other words, wouldn't it be fair to say that if I was going to store my car, I would take it to a garage and say, 'Keep it for a month?'

"A  Yes, sir.

"Q  If I take it down to be repaired, regardless of whether it takes a month or a week, it is under repairs, is it not?

"A  That's right. I don't think it would be under storage."

■  Mr. Darrell Ponder, an insurance adjuster, a witness for appellee, testified, over objection, that the policy sued on here had a "very broad coverage." This testimony should not have been admitted. It is meaningless. We do not believe its admission reversible error under Rule 434, Texas Rules of Civil Procedure.

**370**

If, as we have assumed in favor of appellant, the evidence raises an issue of fact as to whether or not these automobiles were in storage or on display at the South Congress address when damaged by fire, then it is our opinion that testimony as to the meaning of those terms among automobile dealers was properly admitted. The rule is stated in Frost v. Martin, 203 S.W. 72, by the Fort Worth Court of Civil Appeals, as follows:

"It is the general purpose of all rules for the construction of contracts to aid in ascertaining the intention of the parties, and, since it is a well-recognized canon of construction that technical words are to be interpreted as usually understood by persons in the profession or business to which they relate, unless it is evident that they were used in a different sense (see 2 Elliott on Contracts, § 1511), we think expert testimony was admissible, in case of a disagreement as to the meaning and purport of such technical words, to explain the sense in which such technical terms were understood generally by those engaged in the business of drilling oil or gas wells. The issue was sharply drawn by the pleadings as to whether or not the hole drilled by the lessee was a 'completed' well, plaintiffs contending that it was not, and defendant insisting that it was. * * * The court did not attempt to define the word 'completed' as applied to a well; hence the jury were left without a guide or chart, except of the common experience and knowledge of mankind, to assist them in determining the sense in which the word 'completed' was used by the parties to this contract."

See also Contracts, 13 Tex.Jur.2d Sec. 137, Texas Law of Evidence, 2d Ed., McCormick and Ray, Sec. 1425, Missouri Pac. R. R. Co. v. Trautmann Bros., 301 S.W.2d 240, San Antonio Civil Appeals, writ ref., n. r. e.

We are inclined to the view that, as a matter of law, the three automobiles were not at the South Congress address when damaged for the purpose of storage or display. We have, however, disposed of this case upon the assumption that these matters were issuable and that the findings of the jury are conclusive.

There being no error requiring reversal of this case, the judgment of the Trial Court is affirmed.

Affirmed.