**ROYAL INDEMNITY COMPANY,**
Petitioner,

v.

**Bob MARSHALL, Jr., Respondent.**

**No. A–10207.**

Supreme Court of Texas.

March 10, 1965.

House, Mercer, House & Brock, San Antonio, for petitioner.

E. B. Fuller, Arthur Mitchell, Austin, for respondent.

GRIFFIN, Justice.

Respondent Bob Marshall, Jr., as plaintiff, sued petitioner Royal Indemnity Company, as defendant, in a district court of Travis County, Texas, upon an insurance policy for damages to three of plaintiff's used automobiles damaged by fire while in a garage owned by another and not a place of business used by plaintiff and not named in the insurance policy.

Trial was to a jury which made findings (1) that the cars destroyed were not, as contemplated by the insurance policy, in storage at 508 South Congress Avenue; (2) the cars were not on display at this address; and (3) the amount of damages was $3325.-00. Upon these answers the trial court entered judgment for the plaintiff. Upon appeal this judgment was affirmed. 378 S.W.2d 364.

We reverse the judgments of both courts below and render judgment that plaintiff take nothing.

The disposition of this case depends on the proper construction of the following

endorsement attached to and made a part of the insurance policy:

2. "Named Locations—The insured represents that the specific locations named herein are all of the locations or spaces within locations owned, rented or controlled wholly or in part and used by the insured as places of display or storage of automobiles on the inception date of the policy. The company's limit of liability for each such location shall be as stated herein.

" * * *

"The limit of liability stated for the main sales location shall be inclusive of the limit of liability for automobiles designated in paragraph 1, 'Property Covered,' which are made available for the use of the owner, officers or employees and privately stored at other than the named locations, and the actual cash value of all such automobiles shall be included in the monthly statements of values reported for the main sales location.

"UNNAMED LOCATIONS—

"(a) The insured shall report to the company any other location owned, rented or controlled wholly or in part by him which he commences to use as a place of display or storage of automobiles. Prior to receiving such report, the company shall not be liable for loss occurring after the first 45 days following the commencement of such use and the company's limit of liability at any such location shall not exceed $———.

"(b) As respects automobiles at locations other than those named herein or in another policy affording the insured insurance against loss covered hereunder or described in paragraph (a) above, the company shall not be liable for loss occurring more than 7 days after liability could first attach as respects any one location and the com-

pany's limit of liability at all such other locations shall not exceed $———."

The location named was at 612 North Lamar Street.

Plaintiff is a dealer in used automobiles. At the time the policy was issued he conducted his business at 612 North Lamar Street, Austin, Texas, as shown in the policy.

Shortly after the policy was issued plaintiff sold his lease and improvements at 612 North Lamar Street, but retained his cars and began business at West 5th Street and West Avenue, which was the location of his father's business. This change in location of plaintiff's business was communicated to defendant insurance company, and it issued a proper endorsement noting the changed location, and this endorsement was attached to the original policy held by plaintiff.

Plaintiff's father owned a building located at 508 South Congress Avenue, Austin, Texas, which he used in connection with his business for the purpose of painting and repairing cars for sale. This process is known to the trade as a "make ready" process.

Prior to the fire, plaintiff had sent three of his used cars to this building on South Congress for painting and repair to make them ready for sale by him. The South Congress building was not a display room for the sale of cars.

Plaintiff seeks to recover on the policy because he contends that the limitation of liability set out in paragraph 2(b) whereby cars belonging to plaintiff are covered for only seven days when at locations not named in the policy and not described in paragraph 2(a) does not apply to plaintiff's cars while they are temporarily in others' shops for repair and not for storage or display. This reasoning is based on the premise that the word "location" as used in the endorsement must be read in connection with the

practices and customs of the used car business and the nature of that business, and when so construed means only a place where used cars are stored or displayed; that it does not mean a place where used cars are repaired or "made ready." Plaintiff says that by the issuance of the policy, defendant company agreed to insure the used car dealer and his cars in all uses relevant to his business; that in the used car business it is necessary that cars be taken from the location where they are stored or displayed for sale and taken to garages owned and controlled by others to be repaired or for other "make ready" services; that the three damaged cars were at such a place at the time of the fire, and the limitations of liability in paragraph 2(b) of the endorsement cannot be held to relieve the company of liability.

The defendant insurance company contends that paragraphs 2(a) and 2(b) of the endorsement are exclusive of each other and describe two distinct and separate coverages; and that it is not liable for the damage to the cars, suffered more than seven days after insured began to use this unnamed location.

The policy contained provisions insuring cars at "named" locations and also at "unnamed" locations. The coverage afforded at named locations does not apply in our case. The language used under this heading may throw some light upon the proper construction of that portion of the endorsement having to do with coverage afforded at "unnamed locations."

The language used under the heading "Named Locations" affords coverage to cars at such named locations used for "places of display or storage of automobiles." This portion of the endorsement also covers automobiles "made available for the use of the owner, officers or employees and privately stored at other than the named location." The three damaged cars do not qualify for coverage under any of the language in the paragraph entitled "Named Locations" and plaintiff does not contend that these cars were included in the coverage provided by this part of the policy.

■ The next part of the policy is under the heading "Unnamed Locations." Paragraph (a) covers any other locations "owned, rented, or controlled wholly or in part by him (the insured) which he commences to use as a place of display or storage of automobiles." It further provides that a report of such locations shall be made to the insurer within forty-five days, and if no such report is made in such time, the insurer shall not be liable for loss occurring after the forty-five days reporting period. This provision does not afford coverage for the three damaged automobiles, because their location at the time of the fire damage was not "owned, rented or controlled wholly or in part," by plaintiff nor was the location used by plaintiff "as a place of display or storage of automobiles."

Paragraph (b) under this "Unnamed Locations" heading would afford coverage for the first seven days plaintiff had any automobiles located there.

The language is: "As respects automobiles at locations other than those named herein * * *" or at other unnamed locations described in paragraph (a) "the company shall not be liable for loss occurring more then seven days after liability could first attach as respects any one location * * *." The locations named in paragraph (a) are those "owned, rented or controlled wholly or in part by him (the insured) which he commences to use as a place of display or storage of automobiles."

■ It must follow that plaintiff's cars were covered only by subparagraph (b) of the policy endorsement. However, this endorsement, by its plain language does not apply so as to afford coverage if plaintiff has kept his cars at this unnamed location (508 South Congress Avenue) for "more than seven days," prior to the damages. The plaintiff's testimony shows that

plaintiff had kept the three cars at this unnamed location for more than seven days prior to the fire. There was no coverage of plaintiff's automobiles and plaintiff cannot recover from defendant for their loss.

Plaintiff also contends that the first paragraph of the endorsement clearly sets out that it is "automobiles" that are insured and not "locations," and that the sections dealing with "named locations," and "unnamed locations" are obviously intended to define the places at which the dealer is doing business, displays and stores those automobiles covered by the language of paragraph 1 of the endorsement.

To give the above meaning to the word "location" everywhere it is used in the endorsement would cause a conflict between subparagraphs (a) and (b) and make subparagraph (b) reduce the required time from forty-five days to seven days. Subsection (a) specifically uses "location" with the meaning given the word by plaintiff, but subparagraph (b) by its language excludes its application to all locations "described in paragraph (a) above." Paragraph (b) covers "automobiles at locations" separate and distinct from "named locations" or at "unnamed locations" not described in paragraph (a). Therefore, it covers automobiles at all locations other than those *named* in the endorsement and other than those *not named* in the endorsement but which are located on premises "owned, rented or controlled wholly or in part" by insured and "which locations he commences to use as a place of display or storage of automobiles." The coverage of paragraph 2(b) is only for seven days. In subparagraph 2(a) the coverage is for forty-five days.

■ Plaintiff says that his construction of the meaning of the word "location" is a reasonable one and is the one which is prevalent in the used car business and therefore should be given by the courts so as to carry into effect the meaning of the parties to the insurance policy. Plaintiff cites the case of Frost v. Martin (Tex. Civ.App. 1918), 203 S.W. 72, no writ history, to sustain his position. This case has no precedential value, but its reasoning as applied to the meaning of the word "completed" is logical and reasonable. That case involved the construction of an oil and gas lease made in 1915, when the petroleum industry in this state was in its infancy, and when the word "completed" as applied to the drilling of a hoped-for oil or gas well had no definite meaning. Not so in our case, which is an insurance policy using the word "location." There is no uncertainty as to the meaning of this word, and the policy itself provides for named locations and defines them. It also provides for two kinds of "unnamed locations" and defines and distinguishes them. There is no ambiguity in the meaning of the word "location," and therefore, no evidence as to its meaning was admissible or necessary.

■ Plaintiff contends that insurance contracts are to be strictly construed in favor of the insured and against the insurer. This rule applies in cases where the policy uses terms of doubtful meaning or where the language of the contract is ambiguous. This general rule does not affect another general rule of construction of all contracts, to-wit: that all parts of a contract are to be taken together, and that such meaning shall be given thereto as will carry out and effectuate to the fullest extent the intention of the parties. United American Insurance Co. v. Selby, 161 Tex. 162, 338 S.W.2d 160, 1st col. 164 (1960); Pan American Life Insurance Co. v. Andrews, 161 Tex. 391, 340 S.W.2d 787 (1) (1960); 32 Tex.Jur.2d 102, Ins. Sec. 54 and authorities therein cited.

Plaintiff further argues that it is a universally known fact that dealers in used cars must have them in repair shops for "make ready" work in order to sell the used cars at their best advantage. This being true and the policy covering plaintiff as a used car dealer, plaintiff says the policy should be construed to carry out this intention.

 Courts cannot make new contracts between the parties, but must enforce the contracts as written. Where the terms of an insurance policy are plain, definite and unambiguous, the courts cannot vary these terms. As said by this Court in the case of British America Assurance Co. v. Miller, 91 Tex. 414, 44 S.W. 60, 62, 30 L.R.A. 545, 66 Am.St.Rep. 901 (1898): "In other words, the court will not hold that the insurance company did not intend to insure that which it expressly contracted to insure; on the other hand, courts will not so construe plain language as to make a contract embrace that which it was intended not to include." See also Fireman's Insurance Co. v. Alonzo, 112 Tex. 283, 246 S.W. 82 (1923); Taylor v. United States Fidelity & Guaranty Co. (Com. of App. 1926), 283 S.W. 161; and United States Fire Ins. Co. of New York v. Rothwell (Com. of App. 1933), 60 S.W.2d 759.

 The policy here sued on provides for different coverages and insures automobiles at certain locations, describing and defining these locations. In the face of the policy language, we cannot change or enlarge the coverage.

 Plaintiff further contends that the various provisions in the policy describing and defining "location" of automobiles are exceptions to the general coverage of all automobiles owned by plaintiff. It is contended that since defendant did not specifically plead these exceptions under Rule 94, Texas Rules of Civil Procedure, defendant waived any purported seven-day limitation of coverage as set out in such paragraph (b).

Defendant is not seeking to avail itself of any exception to its general hazards insured against. It has taken the position that the burden was on plaintiff to plead and prove facts showing that the damages done to his used automobiles was within the coverage provided in the insurance policy. Rule 94, Texas Rules of Civil Procedure, does not apply here, and defendant could resist plaintiff's cause of action without specifically pleading the coverage provisions of the policy. Defendant denied that the policy and endorsements "covered the loss complained of * * *." This was sufficient. Bethea v. National Casualty Co. (Tex.Civ.App. 1957), 307 S.W.2d 323, writ refused.

At the close of the evidence, the defendant filed in the trial court its motion for an instructed verdict. This motion should have been sustained.

The judgments of both courts below are reversed and judgment here rendered that plaintiff take nothing.