Reversed and Rendered in Part, Remanded in Part, and Opinion filed
October 11, 2005









Reversed
and Rendered in Part, Remanded in Part, and Opinion filed October 11, 2005.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-04-00541-CV

____________

 

HELMERICH & PAYNE
INTERNATIONAL DRILLING CO., Appellant

 

V.

 

SWIFT ENERGY COMPANY, Appellee

______________________________________________________

 

On Appeal from the 129th District Court

Harris County, Texas

Trial Court Cause No. 02-11959

______________________________________________________

 

O P I N I O N








This is a contract construction case arising out
of a dispute between parties to a drilling contract.  The contractor argues that, under its
unambiguous terms, the drilling contract allocates responsibility for the loss
in question to the operator.  The
operator relies on a line of federal cases that seek to give effect to both
indemnity provisions and covenants to name another party as an additional insured.  Faced with cross-motions for summary
judgment, the trial court ruled in favor of the operator and rendered summary
judgment against the contractor on the operator=s
breach-of-contract claim.  We conclude
that, even if Texas were to adopt the line of cases upon which the operator
relies, these cases do not apply to the drilling contract in this case.  Because the unambiguous language of the
drilling contract allocates responsibility for this loss to the operator, we
reverse the trial court=s
judgment and render judgment granting the contractor the declaratory relief it
sought in its petition and denying the operator recovery on its
counterclaim.  We also remand this case
to the trial court for further proceedings regarding the contractor=s
attorney=s fees
request.

I. 
Factual and Procedural Background

The contractor, appellant Helmerich & Payne
International Drilling Co. (AH&P@), and
the operator, appellee Swift Energy Company (ASwift@), are
parties to a Daywork Drilling Contract, dated July 27, 2000 (the ADrilling
Contract@).  The Drilling Contract initially covered the
Kana #1-H well in Fayette County, Texas. 
In December 2000, the parties agreed by letter that the terms and
conditions of the Drilling Contract (with the exception of certain rates) would
apply when H&P drilled the Post #1 well in Goliad County, Texas.           During H&P=s
operations at the Post #1 well, drilling fluids spilled into the surrounding
field.  Swift had this spill cleaned up,
incurring $155,078.86 in total costs relating to the spill (ACosts@).  The Drilling Contract requires H&P to
maintain a Comprehensive General Liability (ACGL@)
insurance policy that includes Swift as an additional insured.  H&P maintained a CGL policy issued by
American Home Assurance Company (the ACGL
Policy@).  Swift made a claim for the Costs as an
additional insured under the CGL Policy. 
American Home responded to the claim by agreeing that Swift had additional-insured
status under the CGL Policy; however, American Home concluded it owed nothing
because the claim fell within the $750,000 deductible per occurrence for
pollution claims under the CGL Policy.








H&P refused to reimburse Swift for the
Costs.  Instead, H&P filed this suit
as a declaratory-judgment action to determine its rights and obligations under
the Drilling Contract.  In its petition,
H&P seeks a judgment declaring that the Drilling Contract allocates
responsibility for all claims and damages resulting from the flow or spill of
drilling fluids in the incident in question to Swift, that the Drilling
Contract precludes Swift from recovering the Costs, and that Swift must defend
and indemnify H&P in any action to recover the Costs.  H&P also sought its reasonable and
necessary attorney=s fees
under Chapters 37 and 38 of the Texas Civil Practice and Remedies Code.

Swift filed a counterclaim against H&P for
breach of contract based on H&P=s alleged
failure to honor its purported obligation to reimburse Swift for the
Costs.  Swift also sought declaratory
relief in this regard, as well as reasonable and necessary attorney=s fees
under Chapters 37 and 38 of the Texas Civil Practice and Remedies Code.

H&P and Swift filed cross-motions for summary
judgment.  The trial court granted Swift=s motion
and denied H&P=s
motion.  The trial court rendered a final
judgment awarding Swift actual damages of $154,193.86, plus attorney=s fees,
court costs, and prejudgment and postjudgment interest.  H&P now challenges that judgment and asks
this court to reverse and render judgment granting H&P=s motion
for summary judgment.

II.  Standard of Review








A summary-judgment movant must establish its right
to summary judgment by conclusively proving all elements of the movant=s claim
or defense as a matter of law.  See
Tex. R. Civ. P. 166a(c); Havlen
v. McDougall, 22 S.W.3d 343, 345 (Tex. 2000).  When both parties move for summary judgment,
each party must carry its own burden, and neither can prevail because of the
failure of the other to discharge its burden.[1]  INAC Corp. v. Underwriters at Lloyd=s, 56
S.W.3d 242, 247 (Tex. App.CHouston
[14th Dist.] 2001, no pet.).  Because
each party was a movant, the burden for each was the same: to establish
entitlement to a summary judgment by conclusively proving all the elements of
the claim or defense as a matter of law. 
Id.  When both sides move for
summary judgment and the trial court grants one motion and denies the other,
the appellate court must review all summary-judgment evidence, determine all
issues presented, and render the judgment that the trial court should have
rendered.  FM Props. Operating Co. v.
City of Austin, 22 S.W.3d 868, 872 (Tex. 2000).  This court reviews the summary-judgment
evidence using familiar standards of review. 
See Dolcefino v. Randolph, 19 S.W.3d 906, 916 (Tex. App.CHouston
[14th Dist.] 2000, pet. denied).

III.  Issue Presented

In a single issue on appeal, H&P asserts the
trial court erred in granting Swift=s motion
for summary judgment and in denying H&P=s motion
for summary judgment.  H&P asserts,
among other things, that under the unambiguous language of paragraph 14 of the
Drilling Contract, Swift assumed all responsibility for the Costs, agreed to
release and indemnify H&P for the Costs, and agreed that the provisions of
paragraph 14.11 would take precedence over the provisions of paragraph 13 to
the extent of any conflict. 

IV.  Analysis

The parties=
arguments implicate several provisions of the Drilling Contract.  The top of the first page of the Drilling
Contract states, ATHIS
AGREEMENT CONTAINS PROVISIONS RELATING TO INDEMNITY, RELEASE OF LIABILITY, AND
ALLOCATION OF RISK.@
(emphasis in original).  Paragraph 14 of
the Drilling Contract contains the following relevant provisions:

RESPONSIBILITY FOR LOSS OR DAMAGE, INDEMNITY,
RELEASE OF LIABILITY AND ALLOCATION OF RISK:

. . .








14.11  Pollution and
Contamination:  Notwithstanding
anything to the contrary contained herein, except the provisions of
Paragraphs 10 and 12, it is understood and agreed by and between [H&P] and
[Swift] that the responsibility for pollution and contamination shall be as
follows:

(a) 
Unless otherwise provided herein, [H&P] shall assume all
responsibility for, including control and removal of, and shall protect, defend
and indemnify [Swift] from and against all claims, demands and causes of action
of every kind and character arising from pollution or contamination, which
originates above the surface of the land or water from spills of fuels,
lubricants, motor oils, pipe dope, paints, solvents, ballast, bilge and
garbage, except unavoidable pollution from reserve pits, wholly in [H&P=s] possession and control
and directly associated with [H&P=s] equipment and
facilities.

(b)  [Swift]
shall assume all responsibility for, including control and removal of, and shall
protect, defend and indemnify [H&P] from and against all claims,
demands, and causes of action of every kind and character arising
directly or indirectly from all other pollution or contamination which may
occur during the conduct of operations hereunder, including, but not limited
to, that which may result from fire, blowout, cratering, seepage or any other
uncontrolled flow of oil, gas, water or other substance, as well as the use or
disposition of all drilling fluids, including, but not limited to, oil
emulsion, oil base or chemically treated drilling fluids, contaminated cuttings
or cavings, lost circulation and fish recovery materials and fluids. [Swift]
shall release [H&P] of any liability for the foregoing.

. . .

14.13  Indemnity Obligation:
Except as otherwise expressly limited herein, it is the intent of parties
hereto that all releases, indemnity obligations and/or liabilities assumed by
such parties under terms of this Contract, including, without limitation,
Subparagraph 14.1 through 14.12 hereof, be without limit and without regard to
the cause or causes thereof (including preexisting conditions), strict
liability, regulatory or statutory liability, breach of warranty (express or
implied), any theory of tort, breach of contract or the negligence of any party
or parties, whether such negligence be sole, joint or concurrent, active or
passive.[2]








(italics added).   

Swift
does not argue that the Costs arise from the pollution or contamination
described in Paragraph 14.11(a), and the summary-judgment evidence shows that
the Costs arise directly or indirectly from the pollution or contamination
described in paragraph 14.11(b).  Swift
asserts, among other things, that its counterclaim against H&P does not
implicate paragraph 14 of the Drilling Contract because this counterclaim is a
separate and independent claim under paragraph 13 of the Drilling Contract,
which reads in pertinent part:

13.
Insurance:








At all times during the
life of this Contract, and in addition to, and independent of, the insurance
procurement obligations set forth in paragraphs 14.8 and 14.9, [H&P] shall
procure and maintain insurance coverages of the types and in the amounts set
forth on the attached and incorporated Exhibit C. All such policies
shall be with insurance company(ies) acceptable to [Swift].  [H&P] shall procure from each insurer
providing coverage(s) required in Exhibit C a certificate of insurance
confirming that such insurance is in full force and effect and providing that
such insurance shall not be canceled or materially changed without thirty (30)
days prior written notice to [Swift]. 
All policies required in Exhibit C shall provide: (a) that
underwriters waive all rights of recovery and subrogation as against [Swift],
its parent, subsidiaries, affiliates, and partnerships, and its and their
respective officers, directors, employees, insurers, joint owners, co-lessees,
joint venturers, [Swift=s] contractors,
subcontractors and contract consultants and their respective officers,
directors and employees (AOperator Group@); (b) that such insurance
shall be primary, with regard to obligations issued under this Contract, and
shall not contribute with any insurance Operator Group, or any one of its
members, may carry, regardless of the existence of any Aother insurance@ clauses in such
insurance; (c) that Operator Group shall be included as additional insureds,
except with respect to [H&P=s] worker=s compensation insurance;
(d) that all deductibles, self-insured retentions, or coinsurance
amounts shall be the sole obligation of [H&P]; (e) that all
coverages afforded to Operator Group shall be coextensive with the coverage
provided to [H&P] or any named insured on such policy, and any language in
such policies which purports to limit the coverage available to Operator Group
shall be deemed deleted as to Operator Group, and (f) that the coverage
afforded Operator Group as additional insureds under the policies listed in Exhibit
AC@ shall extend to Operator
Group for claims and liabilities expressly assumed by [H&P] and arising out
of or relating to this Contract or work under this Contract.  In the event that [H&P] chooses to carry
insurance with greater limits than those required under Exhibit C,
Operator Group, as additional insureds, shall be entitled to the full limits of
all insurance which [H&P] actually carries up to a maximum of $35,000,000.

(underlining
in original; italics added).

Exhibit C
to the Contract contains specifications for the various insurance policies,
including the CGL Policy.  Exhibit C
requires that the CGL Policy include pollution coverage, and it does.  Exhibit C does not contain any requirements
regarding the deductible for the CGL Policy. 
The CGL Policy does not provide that all deductibles shall be the sole
obligation of H&P.

H&P=s alleged
liability for the Costs is one arising out of H&P=s
operations.  As to such liabilities, the
CGL Policy provides additional-insured coverage when such coverage is required
by written contract.  The CGL Policy
states that the insurer=s
obligation to pay damages under the policy applies only to the amount of
damages in excess of the applicable deductible amount for that coverage.  Under the CGL Policy, the deductible amount
for pollution coverage is $750,000 per occurrence.  American Home refused to pay any amount of
the Costs because they did not exceed the $750,000 per-occurrence
deductible.  








Neither
party claims the Drilling Contract is ambiguous.  Whether a contract is ambiguous is a question
of law that we must decide by examining the contract as a whole in light of the
circumstances present when it was created.[3]  See Columbia Gas Transmission Corp. v. New
Ulm Gas, Ltd., 940 S.W.2d 587, 589 (Tex. 1996).  If the written agreement is so worded that it
can be given a certain or definite legal meaning or interpretation, then it is
not ambiguous and we will construe it as a matter of law.  See American Mfrs. Mut. Ins. Co. v.
Schaefer, 124 S.W.3d 154, 157B58 (Tex.
2003).  For reasons explained below, we
conclude that, although the Drilling Contract may be susceptible to more than
one interpretation, there is only one reasonable interpretation as to the
issues presented in this appeal. 
Therefore, we construe the Drilling Contract as a matter of law.  See id.

In
construing the Drilling Contract, our primary concern is to ascertain and give
effect to the intentions of the parties as expressed in the written
agreement.  Kelley-Coppedge, Inc. v.
Highlands Ins. Co., 980 S.W.2d 462, 464 (Tex. 1998).  To ascertain the true intentions of the
parties to the contract, we examine the entire agreement in an effort to
harmonize and give effect to all of the provisions of the contract so that none
will be rendered meaningless.  MCI
Telecomms. Corp. v. Texas Utils. Elec. Co., 995 S.W.2d 647, 652 (Tex.
1999).  We cannot rewrite the Drilling
Contract or add to its language under the guise of interpretation.  See id. at 161B62
(stating Awe may neither rewrite the
parties= contract
nor add to its language@).  Rather, we must enforce the Drilling Contract
as written.  See Royal Indem. Co. v.
Marshall, 388 S.W.2d 176, 181 (Tex. 1965).








In its
counterclaim, Swift asserts that H&P breached a contract by refusing to
reimburse Swift for the Costs; however, Swift does not specify the contract
that it alleges H&P breached.  In
both its motion for summary judgment and in its appellate brief, Swift appears
to be arguing that it is suing for breach of the CGL Policy, or in the
alternative for breach of the Drilling Contract.[4]  The trial court=s
judgment does not specify which contract it found H&P to have
breached.  We address, in turn, whether
the trial court properly granted summary judgment based on an alleged breach of
the CGL Policy and based on an alleged breach of the Drilling Contract.

A.        Did the trial court err to the extent it granted summary
judgment based on H&P=s alleged breach of the
CGL Policy?

 

Presuming,
without deciding, that there is no general impediment to an additional insured
under an insurance policy suing a named insured for payment of the policy
deductible, Swift still would have to base its breach-of-contract claim on
language in the CGL Policy that creates a contractual obligation for H&P to
reimburse Swift for covered claims that are within the policy deductible.[5]
 See Schaefer, 124 S.W.3d at 157B58
(stating that insurance policies are construed under normal rules of contract
construction).  After reviewing the
entire CGL Policy, we find no language that creates such an obligation.  The CGL Policy states that the insurer=s
obligation to pay damages under the policy applies only to the amount of
damages in excess of the applicable deductible amount for that coverage.  The CGL Policy is silent as to how claims
within the deductible are to be allocated between or among named insureds and
additional insureds.  The CGL Policy does
not provide that all deductibles shall be the sole obligation of H&P.  Under the unambiguous language of the CGL
Policy, we conclude it imposes no contractual obligation on H&P to
reimburse Swift for claims within the deductible amount.[6]
 See id. at 161B62
(holding that unambiguous language of insurance contract did not impose
obligation to compensate insured for Adiminished
market value@).  We conclude the trial court erred to the
extent it granted summary judgment based on H&P=s alleged
breach of the CGL Policy.[7]








B.        Did the trial court err to the extent it granted summary
judgment based on H&P=s alleged breach of the
Drilling Contract and denied H&P=s motion for summary
judgment?

 

Swift
also asserts that H&P breached the Drilling Contract by refusing to
reimburse Swift for the Costs.  Swift
argues that H&P has an obligation to reimburse Swift for claims within the
deductible of the CGL Policy based on paragraph 13 of the Drilling
Contract.  Paragraph 13 requires that
H&P procure and maintain a CGL policy, and it requires that the CGL policy
provide that all deductibles shall be the sole obligation of H&P.  Paragraph 13, however, does not state that
H&P must reimburse Swift for a claim within the deductible; therefore, any
such obligation would be an implied obligation necessary to carry into effect
the purposes of paragraph 13.  For the
purposes of our analysis, we presume, without deciding, that the language of
paragraph 13, by itself, would impose an implied obligation on H&P to
reimburse Swift for the Costs.[8]  








Under
paragraph 14.11 of the Drilling Contract, notwithstanding anything to the
contrary contained in paragraph 13 of the Drilling Contract, Swift releases,
assumes all responsibility for, and shall protect, defend, and indemnify
H&P from and against all claims of every kind and character arising,
directly or indirectly, from pollution or contamination such as that which gave
rise to the Costs.[9]  Furthermore, paragraph 14.13 states, among
other things, that the parties intend that all releases, indemnity obligations,
and/or liabilities assumed by Swift under paragraph 14.11(b) shall be without
limit.  Even if the language of paragraph
13, by itself, would impose an obligation on H&P to reimburse Swift for the
Costs, to this extent, this language would be contrary to Swift=s
release, assumption of all responsibility for, and indemnification of H&P
against all claims of every kind and character arising, directly or indirectly,
from pollution or contamination that gave rise to the Costs.  Under the plain meaning of paragraph 14.11,
Swift assumes all liability for the Costs and indemnifies H&P against all
claims of every kind and character arising, directly or indirectly, from
pollution or contamination that gave rise to the Costs, notwithstanding any
obligation to reimburse Swift for the Costs that may be contained in paragraph
13 of the Drilling Contract.








When
parties use the clause Anotwithstanding
anything to the contrary contained herein@ in a
paragraph of their contract, they contemplate the possibility that other parts
of their contract may conflict with that paragraph, and they agree that this
paragraph must be given effect regardless of any contrary provisions of the
contract.  See Cleere Drilling Co. v.
Dominion Explor. & Prod., Inc., 351 F.3d 642, 649 & n.13 (5th Cir.
2003) (applying Texas law to drilling contract containing language
substantially similar to paragraph 14.11 of the Drilling Contract and stating
that the Anotwithstanding anything to the
contrary contained herein@ clause
constitutes an express declaration by the parties that this paragraph of the
drilling contract supersedes all other provisions of the contract[10]);
Gulf Oil Corp. v. Southland Royalty Co., 496 S.W.2d 547, 551 (Tex. 1973)
(stating that section of lease containing Aanything
in this lease to the contrary notwithstanding@ clause
gave that section of the lease priority over any contrary lease provision); N.M.
Uranium, Inc. v. Moser, 587 S.W.2d 809, 814B15 (Tex.
Civ. App.CCorpus Christi 1979, writ ref=d n.r.e.)
(stating that court had to give effect to one provision of a lease regardless
of a conflicting provision because the former provision contained an Aany
provision herein to the contrary notwithstanding@ clause);
Ridgewood Timber, Inc. v. GMAC Commercial Mort. Corp., No.
05-99-00054-CV, 1999 WL 1140821, at *4 (Tex. App.CDallas,
Dec. 14, 1999, no pet.) (not designated for publication) (stating that, even if
two contract provisions conflicted, the one with the Anotwithstanding
anything to the contrary contained herein@ clause
would take precedence).  Accordingly, we
conclude that, under the unambiguous language of the Drilling Contract, Swift
has released H&P from any obligation to pay the Costs, assumed all
responsibility for the Costs, and indemnified H&P against all claims of
every kind and character arising, directly or indirectly, from pollution or
contamination that gave rise to the Costs.[11]









Swift
asserts that H&P=s
obligations under paragraph 13 are separate and independent and do not conflict
with paragraph 14.11 because they do not upset the risk-allocation scheme in
the Drilling Contract.  Swift argues that
it is not asserting a direct claim against H&P for pollution loss; rather,
Swift is asserting its right to insurance coverage against H&P as an
additional insured under the CGL Policy. 
To the extent Swift is referring to an alleged claim against H&P for
breach of the CGL Policy, this claim fails for the reasons stated above.  To the extent this argument refers to Swift=s claim
for alleged breach of the Drilling Contract, we conclude this argument lacks
merit.  Imposing an obligation on H&P
under paragraph 13 to reimburse Swift for the Costs would be contrary to the
risk-allocation scheme in the Drilling Contract.  Swift is suing H&P for an alleged breach
of an obligation under paragraph 13 that would impose responsibility on H&P
for a liability that Swift assumed under paragraph 14.11.  Presuming such an obligation exists under
paragraph 13, it is contrary to paragraph 14.11 and therefore, it is negated by
paragraph 14.11=s Anotwithstanding
anything to the contrary contained herein@
clause.  Although the obligations under
paragraph 13 may be separate and independent, as Swift asserts, this status
does not remove the contractual prohibition barring paragraph 13 from imposing
obligations contrary to paragraph 14.11. 
The parties agreed that paragraph 14.11 must be given effect regardless
of any contrary obligations imposed by paragraph 13, and paragraph 13=s
separate and independent nature does not alter this agreement.[12]








Swift also asserts that construing paragraph 14.11 to preclude its
right to reimbursement for the Costs under paragraph 13 would render paragraph
13 meaningless.  We disagree.  The CGL Policy provides coverage for various
risks that fall outside the scope of paragraph 14.11(b), including but not
limited to risks described in paragraph 14.11(a).  Therefore, our construction of the Drilling
Contract does not render meaningless H&P=s
agreement in paragraph 13 to procure and maintain a CGL policy which provides
that (1) this policy is primary, (2) Swift is an additional insured, (3) all
deductibles shall be H&P=s sole
obligation, and (4) the coverages afforded Swift are coextensive with the
coverage provided to H&P. 
Furthermore, any alleged obligation to reimburse Swift for claims within
the deductible is likewise not rendered meaningless; it simply does not apply
to claims within the scope of paragraph 14.11(b).[13]  On the other hand, to adopt Swift=s
interpretation of the Drilling Contract would render meaningless the Anotwithstanding
anything to the contrary contained herein@ clause
in paragraph 14.11.  See Ridgewood
Timber, Inc., 1999 WL 1140821, at *4 (stating that one party=s
interpretation of the contract at issue would render the Anotwithstanding@
provision meaningless).  

Swift
also cites three cases holding that the language of additional-insured
provisions in the contracts at issue were not tied to the validity of the
indemnity provisions of the contract and therefore were not affected by the
alleged invalidity of the indemnity provisions under applicable anti-indemnity
statutes.  See Mid Continent Cas. Co.
v. Swift Energy Co., 206 F.3d 487, 492B95 (5th
Cir. 2000); LeBlanc v. Global Marine Drilling Co., 193 F.3d 873, 875
(5th Cir. 1999); Lloyd=s of
London v. Oryx Energy Co., 142 F.3d 255, 258B60 (5th
Cir. 1998).  Swift cites these cases in
part for the proposition that paragraph 13 is a separate and independent
obligation; however, as discussed above, this characteristic does not remove
paragraph 13 from the scope and operation of the Anotwithstanding@ clause
in paragraph 14.11.  Even if, as Swift
asserts, these cases indicate that the parties had to clearly state their
intent that paragraph 14.11 limit paragraph 13 to the extent of any conflict,
the parties did so through the Anotwithstanding@
clause.  These three cases do not involve
the issues of contract construction that we face in this case, and they do not
involve a provision containing a Anotwithstanding@
clause.  There is nothing in these cases
that changes our analysis in this case.  

Swift
also argues in the alternative that 
paragraph 14.11 does not come into play until after all of Swift=s Aadditional
insured coverage@ under
paragraph 13 is exhausted.  Swift bases
this argument on four decisions from the United States Court of Appeals for the
Fifth Circuit.  See Tullier v.
Halliburton Geophysical Servs., Inc., 81 F.3d 552 (5th Cir. 1996); Woods
v. Dravo Basic Materials Co., 887 F.2d 618 (5th Cir. 1989); Klepac v.
Champlin Petroleum Co., 842 F.2d 746 (5th Cir. 1988); Ogea v. Loffland
Bros. Co., 622 F.2d 186 (5th Cir. 1980), each of which we address.[14]








In Ogea,
the Fifth Circuit applied Louisiana law in interpreting a drilling contract
that contained an indemnity as well as a covenant by the indemnitee to name the
indemnitor as an additional insured under insurance policies providing coverage
for matters within the scope of the indemnitor=s indemnity
obligation.  See Ogea, 622 F.2d at
188B90.  The Ogea court held that, reading
these two provisions in conjunction with each other, the indemnitee first must
exhaust the insurance it agreed to obtain before obtaining contractual
indemnity against the indemnitor.  See
id. at 188B90.  The relevant provisions of the drilling
contract in Ogea did not contain any Anotwithstanding@ clause
and the relevant indemnity clause did not contain the broad language in
paragraph 14.11 of the Drilling Contract (for example, Aassume
all responsibility for@ and Awithout
limit@).  See id.  

In Klepac,
the Fifth Circuit interpreted a drilling contract without specifying which
jurisdiction=s law applied.  Furthermore, although the court did not quote
the indemnity provision in question, the court did not mention that the
relevant provisions of the contract contain a Anotwithstanding@ clause
or that the relevant indemnity provision contained broad language like that in
paragraph 14.11 of the Drilling Contract. 
See Klepac, 842 F.2d at 746B48. 








In Woods,
the Fifth Circuit interpreted a contract under Louisiana law.  See Woods, 887 F.2d at 619B22.  The insurance clause at issue in Woods
did not contain a Anotwithstanding@ clause,
and, although the court did not quote the entire indemnity provision in
question, the court did not mention that the indemnity contained a Anotwithstanding@ clause
or that it contained broad language like that in paragraph 14.11 of the
Drilling Contract.  See id.  Although the indemnity provision at issue in Woods
stated that nothing in that provision should be construed to affect or limit
any other provision of the contract, the insurance provision at issue also
stated that nothing in that provision should be construed to affect or limit
any other provision of the contract.  See
id. at 619B20.  The Woods court did not discuss the
effect of these clauses; however, this language is not the equivalent of having
a Anotwithstanding@ clause
in the indemnification/assumption of liability provision and no such clause in the
insurance provision.  See id.  In fact, these two clauses support the
application of the Ogea rule because they indicate the parties intended
both the insurance and the indemnity provisions to be given effect to the
fullest extent possible.   

In Tullier,
the Fifth Circuit interpreted a contract under general maritime law.  See Tullier, 81 F.3d at 552B55.  The insurance clause at issue in Tullier
did not contain a Anotwithstanding@
clause.  The Tullier court did not
quote the entire indemnity provision in question, but the court did not mention
that the indemnity contained a Anotwithstanding@ clause
or that it contained broad language like that in paragraph 14.11 of the
Drilling Contract.  See id.    

Presuming,
without deciding, that Texas would adopt the Ogea rule, we nonetheless
conclude that this rule does not apply to the facts of this case based on the Anotwithstanding@ clause
and the broad assumption of all liability language contained in paragraph 14.11
of the Drilling Contract.  In the Ogea
line of cases, courts seek to reconcile to the greatest extent possible
indemnification and insurance clauses. 
Unlike those cases, in the case at hand, the parties agreed on how to
reconcile the conflict between paragraph 14.11 and paragraph 13Cthey
agreed that paragraph 14.11 controls to the extent of any conflict.  See Cleere Drilling Co., 351 F.3d at
649 & n.13; Gulf Oil Corp., 496 S.W.2d at 551; N.M. Uranium, Inc.,
587 S.W.2d at 814B15; Ridgewood
Timber, Inc., 1999 WL 1140821, at *4. 









We must
enforce the Drilling Contract as written; we cannot question the wisdom of the
parties=
agreement or rewrite the relevant provisions under the guise of
interpretation.  See Schaefer, 124
S.W.3d at 161B62; Royal Indem. Co., 388
S.W.2d at 181.  Under the unambiguous
language of paragraph 14.11, Swift assumes all liability for the Costs and
indemnifies H&P against all claims of every kind and character arising,
directly or indirectly, from the pollution or contamination that gave rise to
the Costs, notwithstanding any obligation to reimburse Swift for the Costs that
may be contained in paragraph 13 of the Drilling Contract.  Accordingly, under the applicable  standard of review, the trial court erred in
granting Swift=s motion for summary judgment and
in denying H&P=s motion
for summary judgment.  The trial court
should have granted H&P=s motion
and rendered a declaratory judgment as follows:

!         Under the Drilling Contract, Swift is responsible for all
claims and damages resulting from the flow or spill of the drilling fluids in
this matter, including the costs of cleaning up the spill.

!         In the Drilling Contract, Swift released H&P from any
liability for the spill of the drilling fluids in this matter, including the
costs of cleaning up the spill.

!         Swift is precluded from recovering the clean up costs from
H&P, even if Swift=s claim is cast as one for
coverage under the CGL Policy.

!         Swift is required to defend and
indemnify H&P in any action to recover from H&P the clean up costs,
even if cast as payment of a deductible. 


V.  Conclusion








Under the
unambiguous language of the Drilling Contract, Swift assumed all liability for
the Costs and indemnified H&P against all claims of every kind and
character arising directly or indirectly from the pollution or contamination
that gave rise to the Costs, without limit and notwithstanding any obligation
to reimburse Swift for the Costs that may be contained in paragraph 13 of the
Drilling Contract.  Therefore, we conclude
that the trial court erred in granting Swift=s motion
for summary judgment and in denying H&P=s motion
for summary judgment.  Accordingly, we
sustain H&P=s
appellate issue.  We reverse the trial
court=s
judgment, and we render judgment denying Swift=s motion
for summary judgment, granting H&P=s motion
for summary judgment, ordering that Swift take nothing as to its counterclaim,
and making the four declarations contained in section IV. B., supra.  We also remand this case to the trial court
for further proceedings so that the trial court may address H&P=s
attorney=s fees
request.

 

/s/        Kem Thompson Frost

Justice

 

Judgment rendered and
Opinion filed October 11, 2005.

Panel consists of Chief
Justice Hedges and Justices Fowler and Frost.

 

 

 

 











[1]  In its motion, H&P did not
prove its reasonable and necessary attorney=s fees; rather, it stated that it would prove those fees if
the trial court ruled in its favor on the merits of its declaratory-judgment
action.  We conclude that, to the extent
H&P=s motion runs afoul of the
requirement that the cross-motion must seek a final judgment, that motion falls
within the exception for declaratory-judgment relief.  See CU Lloyd=s of Texas v. Feldman, 977 S.W.2d 568, 569 (Tex.
1998).  Accordingly, this court has the
ability to reverse and render judgment as to H&P=s motion and to remand the issue of
attorney=s fees to the trial court.  See id. 





[2]  Swift asserts that paragraph 14.13 is irrelevant to the issues at hand because the
purpose of this paragraph is to satisfy the express negligence test, which is
not an issue in this case.  Nonetheless,
even presuming that this was the main purpose of the parties regarding this
paragraph, we cannot ignore this paragraph as to issues in this appeal to which
its language relates.  





[3]  The Drilling Contract states that
Texas law governs the interpretation and enforcement of that contract and the
relationship between the parties. 
Neither H&P nor Swift has challenged the validity of this choice-of-law
provision, and they both agree that Texas law applies. 





[4]  For example, in its motion for summary
judgment, Swift states that A[n]ow
Swift is seeking coverage under the H&P policy which names Swift as an
additional insured.@  On the other hand, Swift states later in the
motion that A[u]nder
the express terms of the contract at issue, H&P agreed to name Swift as an
additional insured.@  Similarly, in its appellate brief, Swift
asserts that ASwift=s claim is an insurance claim against
H&P=s policy
issued by American Home and not a claim against H&P.@  Later in its brief, Swift asserts that A[e]ven if Swift=s
claim can be construed as a claim against H&P[,] Paragraph 14.11(b) only
comes into play after H&P=s
additional insured obligation has been exhausted.@





[5]  We also presume, without deciding,
that the Costs fall within the pollution coverage of the CGL Policy.





[6]  In its letter
denying Swift=s claim, the insurer under the CGL Policy stated that A[H&P] will be responsible for the deductible.@  Even if we
presume that the insurer meant to say that H&P will be solely responsible
and liable to pay the Costs, this statement of the insurer=s opinion as to H&P=s
liability does not affect our determination of whether H&P is liable to
Swift for the Costs under either the unambiguous language of the CGL Policy or
the Drilling Contract. 





[7]  Furthermore,
even if the CGL Policy otherwise would make H&P liable for the Costs,
paragraph 14.13 of the Drilling Contract states that the parties intend that
all releases, indemnity obligations, and/or liabilities assumed by the parties
under paragraph 14.11 of the Drilling Contract, be without limit and without
regard to any theory of breach of contract. 
Under the analysis in section IV. B., infra, and based on this
language in paragraph 14.13, H&P=s
alleged liability for the Costs still would be negated by paragraph 14.11 of
the Drilling Contract.





[8]  Swift has not
asserted a claim based on an alleged breach by H&P of its contractual
obligation to procure and maintain a CGL policy that provides that all
deductibles shall be its sole obligation, in which case its alleged damages
would be based on an alleged ability to recover under the CGL Policy if the
policy contained such language.  In any
event, even if Swift had asserted a claim based on H&P=s alleged breach of this express obligation under
paragraph 13, our analysis would not be significantly different. 





[9]  Paragraph
14.11 excludes paragraphs 10 and 12 from the Anotwithstanding
anything to the contrary contained herein@ clause;
however, these provisions do not affect our analysis, and paragraph 13 is not
included in this exception to the Anotwithstanding@ clause.





[10]  Like paragraph 14.11 of the
Drilling Contract, the drilling contract in Cleere Drilling Co. excluded
two parts of the drilling contract from the scope of the Anotwithstanding@ clause; however, as in this case,
the two excluded provisions were not relevant to the issues at hand.





[11]  Having ruled in H&P=s favor on this basis, we need not
and do not address H&P=s argument that any obligation it might have to Swift for
reimbursement of the Costs is limited by paragraph 13(f) to claims and
liabilities Aexpressly assumed@ by the H&P.  Likewise, we need not and do not address the
applicability of the Acircuity of action@ doctrine urged by H&P.





[12]  In regard to its Aseparate and independent obligation@ argument, Swift cites a Texas
Supreme Court case holding that an agreement to name a party as an additional
insured is not subject to the requirements of the Texas Oilfield Anti-Indemnity
Statute.  See Tex. Civ. Prac. & Rem. Code Ann. ' 127.001, et seq. (Texas
Oilfield Anti-Indemnity Statute); Getty Oil Co. v. Ins. Co. of N. Am.,
845 S.W.2d 794, 803B05 (Tex. 1992).  The Getty Oil Co. opinion construing
the scope of the Texas Oilfield Anti-Indemnity Statute does not affect our
construction of the Drilling Contract in this case.  No party in this cases asserts that any indemnity
in the Drilling Contract is void under the Texas Oilfield Anti-Indemnity
Statute. 





[13]  It should also be noted that, if, though not
required by the Drilling Contract, H&P procured insurance covering the
Costs, our holding today would not prevent Swift from recovering against the
insurer under the policy providing coverage. 





[14]  Swift
asserts that this court recently acknowledged the validity and accepted the
holding of the Ogea case.  See
Nabors Corp. Servs., Inc. v. Northfield Ins. Co., 132 S.W.3d 90, 98B99 (Tex. App.CHouston [14th Dist.] 2004, no pet.).  We disagree. 
In Nabors, this court simply acknowledged the existence of the Ogea
decision and decided that it was not on point. 
See id.  This court did not
conclude that Ogea was the rule under Texas law.  See id.