**Anthony C. FREDERICK, Plaintiff,**

v.

**ELECTRO–COAL TRANSFER CORPORATION, A/B/C Insurance Company, Alter Fleet, Inc. X/Y/Z Insurance Company, in personam The BARGE AGS 607–B her Engines, Tackle, Apparel, Furniture, etc. in rem, Defendants.**

**Civ. A. No. 74–1230.**

United States District Court,
E. D. Louisiana.

Sept. 16, 1982.

---

84

Robert McComiskey, New Orleans, La., for plaintiff.

Russell Cornelius, New Orleans, La., for Fidelity & Cas. Co. of New York.

Donald Bann, Metairie, La., for Alter Co.

John O. Charrier, Jr., New Orleans, La., for Gulf Coast Transit, Inc.

CASSIBRY, District Judge:

Plaintiff, an employee of Electro-Coal Transfer Corporation, brought suit against Alter Company,[1] alleging that he was injured while working on a barge of which Alter Company was the owner pro hac vice.

---

**1.** At various times, plaintiff has named other parties as defendants as well. However, this litigation has been going on since 1974, and ultimately, Alter Company was the only remaining defendant in the suit.

Alter Company contracted to deliver phosphate rock from ports in Florida to Cairo, Illinois, for the benefit of a company that is not a party to this suit. Alter Company then entered into a transportation agreement with Gulfcoast Transit Company for the actual movement of this phosphate cargo. Under this transportation agreement, Gulfcoast Transit agreed to carry the cargo on its oceangoing barges from the Florida ports to Davant, Louisiana. Once in Davant, Gulfcoast Transit had arranged for Electro-Coal Transfer to then load the cargo into Alter Company barges for the transit upriver to Illinois; the barge upon which the plaintiff was injured, the AGS–607B, was one of these Alter Company vessels. The barges were then to be towed to Illinois by Mid-South Towing Company.

After plaintiff filed suit against Alter Company, Alter Company filed a third party claim against Gulfcoast Transit, alleging that Gulfcoast Transit failed to provide adequate stevedoring services. Specifically, Alter Company alleged that the plaintiff's injuries were sustained as a result of the negligence of Electro-Coal Transfer, who had been employed by Gulfcoast Transit to perform the stevedoring services in Davant, Louisiana. Thus, Alter alleged that Gulfcoast had breached its warranty of providing workmanlike service since Electro-Coal allegedly did not perform the job in a workmanlike manner. (At this point, plaintiff then brought a claim against Gulfcoast Transit also, but this claim was later dismissed on summary judgment).

In response, Gulfcoast alleged that Electro-Coal performed competently and, therefore, denied liability. Furthermore, Gulfcoast alleged that even if it were found to be liable, it was insured by Fidelity & Casualty Company of New York. However, Fidelity & Casualty contended that although it had issued a comprehensive general liability insurance policy to Gulfcoast Transit, for several reasons the claims against Gulfcoast Transit were not covered under the policy. Thus, Fidelity & Casualty denied coverage to Gulfcoast Transit. As a consequence, Gulfcoast Transit then filed a third party claim against Fidelity & Casualty to recover the loss it suffered as a result of the failure of Fidelity & Casualty to defend and indemnify Gulfcoast under the insurance policy.

The claim of the plaintiff against Alter Company, and the claim of Alter Company against Gulfcoast Transit were finally settled. However, Gulfcoast in no respect compromised its third party complaint against Fidelity & Casualty. Therefore, the final question that remains in this suit is whether Gulfcoast was entitled to coverage by Fidelity & Casualty under the insurance policy. For the reasons discussed below, I find that the claims against Gulfcoast Transit are covered under the insurance policy, and that Fidelity & Casualty was arbitrary and capricious in denying coverage.

I.

COVERAGE

*The Warranty of Workmanlike Performance Is Covered Under the Insurance Policy*

Alter Company's claim against Gulfcoast Transit was based upon Gulfcoast Transit's alleged breach of its warranty of workmanlike performance. Gulfcoast Transit made this warranty in its transportation agreement with Alter Company. Alter alleged that Gulfcoast Transit breached this warranty by providing incompetent stevedoring services via Electro-Coal Transit Corporation.

Exclusion (a) of the Fidelity & Casualty insurance policy excludes from coverage any "liability assumed by the insured under any contract or agreement . . ., *but* this exclusion does *not* apply to . . . a warranty that work performed by or on behalf of the named insured will be done in a workmanlike manner." (emphasis added). Thus, the claim by Alter Company against Gulfcoast Transit was clearly within the coverage of the insurance policy since the Alter Company claim was based on unworkmanlike performance.

### The Watercraft Exclusion, On Its Face, Does Not Preclude Coverage

Fidelity & Casualty also argues that exclusion (e) of the insurance policy precludes its liability to Gulfcoast Transit. This exclusion states that no coverage is provided for:

bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of

(1) any watercraft owned or operated by or rented or loaned to any insured, or

(2) any other watercraft operated by any person in the course of his employment by any insured;

but this exclusion does not apply to watercraft while ashore on premises owned by, rented to or controlled by the named insured.

■ A proper reading of this exclusion makes clear that coverage for watercraft is excluded only when there is bodily injury arising from the loading of:

(1) any watercraft owned, or operated by, or rented or loaned to any insured, or

(2) any other watercraft operated by any person in the course of his employment by any insured.

In terms of the first "prong" of this exclusion, clearly Gulfcoast did not own, operate, rent, or have on loan the barge on which the plaintiff was injured. In terms of the second prong, the barge was not operated by any person in the course of his employment with Gulfcoast Transit; no employee or representative of Gulfcoast was anywhere near the barge, or had anything to do with its operation. Therefore, exclusion (e) does not preclude coverage of the "watercraft accident" involved in this case.

### The Watercraft Exclusion Was Deleted

Even if the "watercraft exclusion" were deemed to preclude coverage, I find that this exclusion was intended to be deleted from the insurance policy. Gulfcoast Transit alleges that although endorsement number five of the policy states that "exclusion (d) of the comprehensive liability coverage part of the policy is inapplicable," this was a typographical error and that it was exclusion (e), the "watercraft exclusion," that was intended to be made inapplicable. At trial, Gulfcoast Transit introduced testimony by deposition of the insurance agent who ordered the policy. This agent testified that he unknowingly ordered the wrong exclusion deleted from the policy. He testified that he thought he was asking that the company delete the "watercraft exclusion." In fact, the agent ordered another exclusion—exclusion (d)—deleted. Exclusion (d) deals with bodily injuries arising out of the transportation of mobile equipment by the insured by means of an automobile.

The very language of endorsement number five makes the insurance agent's error clear. The endorsement states:

*As respects the vessels* covered under this policy, it is agreed that exclusion (d) of the comprehensive general liability coverage part is inapplicable.

(emphasis added). Yet exclusion (d) has nothing to do with vessels. In this respect, the terms of the contract are not clear and unambiguous; therefore, parole evidence in the form of the agent's deposition testimony is admissable to explain or vary the terms of the contract. *Mid-Continent Underwriters, Inc., v. Rodriguez,* 323 So.2d 518 (La.App. 4th Cir. 1975); *Lakeshore, Inc., v. Sarafyan,* 225 So.2d 15 (La.App. 4th Cir. 1969).

■ Clearly, it was not exclusion (d)—the "automobile exclusion"—that the agent intended to delete in endorsement number five since that endorsement has to do with coverage under the policy of vessels, not automobiles. In Louisiana, a contract of insurance can be reformed if there was fraud, negligence, or mistaken conduct on the part of the agent issuing the policy. *Kolmaister v. Connecticut Life Insurance Company,* 370 So.2d 630 (La.App. 4th Cir. 1979); *M.F.A. Life Insurance Company v. Huey,* 347 So.2d 63 (La.App. 2d Cir. 1977); *Hebert v. Breaux,* 285 So.2d 829 (1st Cir. 1973). I find that in this case, there was clearly "mistaken conduct" on the part of

the insurance agent. Therefore, the contract should be reformed so that exclusion (e) rather than exclusion (d) is deleted in endorsement number five.

### Endorsement Number One Does Not Preclude Coverage

Fidelity & Casualty also argues that endorsement number one of the insurance policy precludes coverage. That endorsement states:

Anything in the policy to the contrary notwithstanding, it is agreed that this policy does not cover vessels used by the insured for freight or passenger service whether away from or at any premises owned by, rented to, or controlled by the insured.

It is further agreed that this policy covers the insured's liability as respects other vessels, such as barges, tugs or other boats which may be used in the conduct of the insured's business, while such other vessels are at or away from premises owned by, rented to, or controlled by the named insured.

▮ Paragraph one clearly indicates that the policy does not cover vessels used by the insured for freight or passenger service. However, this paragraph is simply inapplicable because, as even Fidelity & Casualty concedes, the vessel on which the plaintiff was injured "was not in any way *used by the insured* (Gulfcoast Transit)." [2]

The second paragraph of the endorsement is ambiguous on the question of coverage. This paragraph seems to provide coverage for vessels used by others for *any* kind of service in the conduct of the insured's business; there is no language here, as in paragraph one, limiting the allowable use of such vessels to services other than "freight or passenger service." Therefore, a reasonable reading of this paragraph indicates that the insurance policy does cover any

incidental liabilities which Gulfcoast Transit may encounter with respect to other vessels not owned by Gulfcoast Transit, but which are connected with the transactions of Gulfcoast Transit's business. In truth, because this endorsement in its entirety is rather inartfully drawn, the extent of insurance coverage intended is not unambiguous. The law is well settled that any ambiguity in the insurance policy must be resolved in favor of the insured and against the insurer, particularly where the construction urged by the insurer would operate to limit or avoid coverage. *McDaniels v. Great Atlantic & Pacific Tea Co.,* 602 F.2d 78, 81 (5th Cir. 1979); *Howard, Weil, Labouisse, Freidrichs, Inc. v. Mobil Drilling Barge MARGARET,* 441 F.Supp. 1, 7 (E.D.La.1975), aff'd 565 F.2d 958 (5th Cir. 1978); *Walter v. Marine Office of America,* 537 F.2d 89 (5th Cir. 1976); *Calcasieu-Marine National Bank of St. Charles v. American Empire Insurance Co.,* 533 F.2d 290, 295 (5th Cir. 1976); *Lemar Towing Co., Inc. v. Fireman's Fund Ins. Co.,* 352 F.Supp. 652, 659 (E.D.La.1972), aff'd 471 F.2d 609 (5th Cir. 1973).

Based on the foregoing, therefore, I find that Fidelity & Casualty does provide insurance coverage to Gulfcoast Transit for the claims filed against Gulfcoast Transit in connection with the accident on barge AGS–607B.

## II.

### PENALTIES AND ATTORNEY'S FEES

Under Louisiana law, the failure of an insurer to pay a claim based solely on the insurer's incorrect interpretation of language in the policy it wrote is *deemed* to be arbitrary, capricious and without probable cause. Even if the language in question has never been litigated before, the risk of erroneous interpretation is that of the insurer, not the insured. Further, the insurer must be held to the knowledge

---

2. Even if the barge could somehow be considered as a vessel "used by" Gulfcoast Transit, it is not clear that the barge was used in "freight service" as that language is commonly understood. Neither Gulfcoast Transit nor Alter Company are common carriers, so that transportation of the phosphate aboard Alter Company's barge was not "common carriage", and thus perhaps not "freight service." However, I find that it is unnecessary to resolve this question.

that any ambiguity in the policy will be interpreted in favor of the insured. Considering this rule of interpretation, the insurer's failure to pay a claim unless it is clearly and unambiguously excluded by the policy is without probable cause. *Gulf Oil Corp. v. Mobile Drilling Barge or Vessel,* 441 F.Supp. 1, 13 (E.D.La.1975), *aff'd.* 565 F.2d 958 (1978) (citations omitted) (emphasis added). *See also Aetna Cas. & Sur. Co. v. Louisiana Nat'l Bank,* 399 F.Supp. 54, 57 (M.D.La.1975); *Reichert v. Continental Ins. Co.,* 290 So.2d 730, 735 (La.App. 1st Cir.), *writ denied* 294 So.2d 545 (La.1974).

*Offshore Logistics Services, Inc. v. Arkwright-Boston Manufacturers,* 469 F.Supp. 1099, 1109 (E.D.La.1979), *aff'd.,* 639 F.2d 1142 (5th Cir. 1981).

Although the general rule—that an erroneous, though reasonable interpretation of a policy by an insurer subjects the insurer to statutory penalties and attorney's fees—has not always been applied in all cases,[3] I find that the rule is appropriate in this case. Therefore, Fidelity & Casualty's refusal to defend and indemnify Gulfcoast Transit, based on its erroneous interpretation of the policy, subjects Fidelity & Casualty to the 12% penalty plus attorney's fees provided for by La.Rev.Stat. 22:658.

■ In connection with this lawsuit, Gulfcoast Transit expended a total of $41,-323.78 in attorney's fees. This figure represents the cost of litigating *both* the issue of liability as well as the issue of coverage under the Fidelity & Casualty insurance policy. The policy provides that Fidelity & Casualty has the duty to defend any suit brought against Gulfcoast Transit that involves liabilities against which it has insured Gulfcoast Transit:

> ... the company shall have the right and the duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage [claims covered by the insurance policy].

Therefore, since the claims against Gulfcoast Transit are covered under the policy, Gulfcoast has the right to recover its expenses connected with defending on the merits of the claims against it. Furthermore, under Louisiana law (La.Rev.Stat. 22:658), because Fidelity & Casualty's failure to defend Gulfcoast was arbitrary and capricious, Gulfcoast Transit is also entitled to recover 12% in punitive damages on the amount of money it expended in defending on the merits, as well as attorney's fees incurred in litigating the issue of insurance coverage.

However, the issues involving the coverage and liability aspects of this case were interrelated. No distinction in computing the time the Gulfcoast Transit attorneys spent on each separate issue was made at trial. As Fidelity & Casualty pointed out itself, "unfortunately, as is often the case with attorneys' statements, it is impossible to calculate mathematically, by use of hours spent and attorneys' rates charged, the precise amount of legal fees and costs that would be attributed to each cause of action alleged." After perusing the attorney's statements of charges which were introduced into evidence, I find it reasonable to conclude that 20% of the total legal fees of $41,323.78 or $8,264.75 represents charges for litigation of the issue concerning insurance coverage. Therefore, Gulfcoast Transit is entitled to recover $33,059.03 plus a 12% penalty on that amount, in addition to the $8,264.75 expended for litigation of the insurance coverage question.

The clerk shall enter judgment accordingly.

---

3. *See, e.g., Rudloff v. Louisiana Health Services & Indemnity Corporation,* 385 So.2d 767 (La. 1980) (on rehearing); *Cotlar v. Gulf Insurance Co.,* 318 So.2d 923, 927 (La.App.1975).