887 F.2d 618
 Jimmie Lee WOODS, Plaintiff,
v.
DRAVO BASIC MATERIALS CO., INC., and Liberty Mutual
Insurance Co., Defendants-Cross Claimants
Plaintiffs-Appellants, Cross-Appellees,
v.
UNITED STATES GYPSUM CO., Defendant-Cross Claim
Defendant-Appellee, Cross-Appellant.
 No. 88-3725.
 United States Court of Appeals,
Fifth Circuit.
 Nov. 6, 1989.
 
 Paul G. Preston, Susan A. Anderson, Dravo & Liberty, New Orleans, La., for defendants-cross claimant plaintiffs-appellants-cross appellees.
 Joseph G. Gallagher, Jr., Hulse, Nelson and Wanek, New Orleans, La., for defendant-cross claim defendant-appellee-cross appellant.
 Appeals From the United States District Court Eastern District of Louisiana.
 Before WISDOM, JOHNSON, and HIGGINBOTHAM, Circuit Judges.
 PATRICK E. HIGGINBOTHAM, Circuit Judge:
 
 
 1
 Dravo Basic Materials Company and its insurer, Liberty Mutual Insurance Company, appeal from a decision of the district court in favor of United States Gypsum Company on the issue of insurance coverage provided by a Liberty policy and required by a contract between Dravo and Gypsum. The district court found that paragraph 12 of the Agreement required Dravo to provide insurance to cover Gypsum's liability for the injury suffered by the plaintiff, Jimmie Lee Woods.
 
 
 2
 Gypsum appeals from the district court's finding that paragraph 13 of the Agreement would require it to indemnify Dravo if the liability to Jimmie Lee Woods were not covered by Liberty's insurance policy, and from the district court's refusal to impose statutory penalties against Liberty for refusing to defend and indemnify Gypsum.
 
 
 3
 We hold that the district court was correct in its interpretation of the Agreement as requiring Dravo to purchase insurance to cover Gypsum's liability for the injury suffered by Jimmie Lee Woods. Because the amount of the policy Dravo purchased from Liberty is greater than the amount of damages for Jimmie Lee Woods's injury, there is no need to reach the indemnity issue. We also do not find that the district court erred in refusing to impose penalties, when it found that Liberty had not acted arbitrarily or capriciously, but had refused coverage in good faith.
 
 I. FACTS AND PROCEDURAL HISTORY
 
 4
 Gypsum and Dravo[1] entered into an Agreement in July 1984, covering the sale and delivery of clam shells to Gypsum. The Agreement contained the following provision:
 
 
 5
 12. Insurance: [Dravo] shall carry at its own expense such types and amounts of insurance to protect [Dravo] and [Gypsum] of and from all risks, losses, damages, claims, expenses, suits or actions arising out of loss, damage or expense to [Dravo] equipment used in the performance of this agreement or arising out of [Dravo's] performance of this Agreement, with insurance coverages and with insurance carriers satisfactory to [Gypsum]. Coverage shall be maintained insuring [Dravo] and all marine units employed by it in the performance of this Agreement, whether owned or chartered, against liabilities, direct or indirect, to [Dravo], crew, employees, or third parties on account of loss of life or personal injury to crew, employees, or third parties, or property damage, with aggregate limits of liability not less than $5,000,000.00 for each occurrence. The coverage shall include contractual liability which will specifically cover the indemnity in Paragraph 13 of this agreement.
 
 
 6
 ... Nothing contained in this Paragraph 12 shall be construed to effect or limit in any way any rights or obligations of either party under any other provision of this agreement.
 
 
 7
 The first part of Paragraph 13 of the Agreement provided that Dravo would indemnify Gypsum for various losses unless caused by the sole fault or neglect of Gypsum, or the joint fault of Gypsum and any third party other than Dravo. The last section of Paragraph 13 provided that Gypsum would indemnify Dravo from various losses caused by Gypsum's negligent acts or omissions in performing its obligations under the Agreement. Paragraph 13 also contained the following: "Nothing contained in this Paragraph 13 shall be construed to affect or limit in any way the provisions of Paragraph 12 hereof, or any other provisions of this Agreement."
 
 
 8
 Dravo purchased insurance from Liberty Mutual, and the policy was to cover all claims for which insurance was required under paragraph 12 of the Agreement. Gypsum was not a named insured under the policy, but the policy specifically stated that it would cover all persons for whom Dravo was required to purchase insurance under the Agreement.[2]
 
 
 9
 On April 23, 1985, Jimmie Lee Woods was employed as a crane operator for Dravo. He was assigned to operate a crane located on a Dravo barge in order to remove clam shells from another barge, and place them on a conveyor system owned by Gypsum. A piece of wood became lodged in part of the conveyor belt, causing the conveyor to stop. Mr. Woods left the crane, turned off the conveyor system, and climbed on the conveyor belt in an attempt to dislodge the wood. While engaged in this operation, he slipped and twisted, causing injury to his back.
 
 
 10
 Jimmie Lee Woods filed a complaint against Dravo, Liberty, and Gypsum. The claims against Dravo and its liability carrier were based on the Jones Act and the General Maritime Law. The claims against Gypsum were founded on negligence and strict liability under Louisiana law. Gypsum filed a cross claim against Dravo and Liberty seeking contractual indemnity from Dravo, and requesting insurance coverage from Liberty. Dravo and Liberty filed cross claims against Gypsum seeking contractual indemnity. Liberty, as worker's compensation carrier for Dravo, intervened seeking reimbursement of compensation paid to or on behalf of Woods.
 
 
 11
 Dravo and Liberty argued for summary judgment against Woods on the ground that he was not a seaman. The district court found that Woods was not a seaman, and dismissed Woods's claims against Dravo and Liberty. The trial court granted summary judgment in favor of Gypsum against Liberty, declaring that, pursuant to the Agreement, Liberty was required to provide coverage to Gypsum for the claims asserted by Woods.
 
 
 12
 Woods's claim against Gypsum was tried to a jury which returned a verdict finding Gypsum 60%, Dravo 30%, and Woods 10% at fault. Pursuant to its earlier grant of summary judgment for Gypsum, the district court ordered Liberty to indemnify Gypsum for its liability to Woods. The district court denied Gypsum's request for penalties against Liberty Mutual under LSA R.S. 22:658 because it found Liberty's denial of coverage and refusal to defend to have been in good faith. The district court went on to find that the contractual indemnity provisions of the contract were moot because of the court's prior ruling on insurance coverage, but nonetheless entered findings on the indemnity provision, and stated that Dravo would be entitled to indemnity from Gypsum. Dravo, Liberty, and Gypsum all appeal from this judgment.
 
 II. INSURANCE REQUIREMENT
 
 13
 Dravo and Liberty contend that the district court erred in its interpretation of Paragraph 12 of the Agreement, when it held that the Agreement required Dravo to purchase insurance covering Gypsum's liability for the claims made by Woods. Dravo and Liberty raise the same argument on appeal that they raised below, asserting that the first sentence of Paragraph 12 meant that Dravo would provide insurance protecting Gypsum and Dravo for claims solely relating to damage which might occur to Dravo's equipment; that the clause "arising out of the seller's performance of this agreement" was to broaden the circumstances for which insurance of the equipment was required; and that it was not intended to require Dravo to obtain insurance for all claims which occurred as a result of the performance of the contract. The district court found this interpretation "nonsensical," and we also are not persuaded that this is an accurate interpretation of the Agreement.
 
 
 14
 A court should look for an interpretation of a contract which, if possible, will give validity to the instrument without eliminating wording which was included in the agreement by the parties. Bland v. Conner, 25 So.2d 815 (La.App.2d Cir.1946). Contrary to Dravo's contention, the district court's interpretation of Paragraph 12 does not ignore any language of the contract. The district court found "that the phrase 'arising out of (Dravo's) performance of this agreement' was used to modify the terms 'all risks, losses, damages, claims, expenses, suits or actions.' " The district court's interpretation recognizes two types of insurance that Dravo would be obligated to procure: (1) insurance to protect Dravo and Gypsum from all risks, etc. "arising out of loss or damage or expenses to seller's equipment used in the performance of this agreement" and (2) insurance to protect Dravo and Gypsum from all risks, etc. "arising out of seller's performance of this agreement." This interpretation gives the "arising out of seller's performance of this agreement" language its most logical meaning, while Dravo's interpretation makes that language essentially superfluous. Furthermore, the trial judge's interpretation is supported by the grammatical structure of the paragraph, with its double use of the words "arising out of" in the first sentence.
 
 
 15
 Dravo argues that when Paragraph 12 is read in light of Paragraph 13, it becomes clear that the interpretation adopted by the district court was not intended by the parties, because if the parties intended Dravo to provide insurance, there would be no need for the indemnity provisions of Paragraph 13, especially "if Gypsum could effectively require Dravo to provide Gypsum insurance coverage for effectively any amount Gypsum desired." Appellant's Brief, p. 22. This argument is based on the premise that Gypsum could require Dravo to procure insurance coverage for any amount Gypsum desired, even after the fact. This ignores the standard workings of the insurance industry and the dealings of the parties. Dravo did buy a policy with specified limits of coverage prior to Jimmie Lee Woods's injury, and there is no question that the Liberty Mutual policy was not satisfactory to Gypsum. Gypsum could not require more insurance after the fact. Just because the amount of coverage was to be decided later does not mean that the contract was ambiguous as to the subject of coverage or the need for indemnification in addition to insurance. The indemnity provisions would come into play if a claim arose out of the performance of the work that was in excess of the insurance coverage provided, or if the insurance carrier became insolvent. It is a common practice in the industry for the parties to contract to require insurance coverage for a portion of the risk and to provide for indemnity in excess of the insurance limits. See e.g., Ogea v. Loffland Brothers Co., 622 F.2d 186 (5th Cir.1980).
 
 
 16
 Gypsum also maintains that Paragraph 12 must be read in light of Paragraph 13, since Paragraph 12 provides: "The coverage shall include contractual liability which will specifically cover the indemnity in Paragraph 13 of this agreement." In Paragraph 13 Dravo agreed to indemnify Gypsum "against all claims ... on account of death or personal injuries, ... arising out of seller's alleged or actual negligent acts or omissions in performing its obligations hereunder,...." While it may be true that both parties knew that the equipment to be used was expensive, and that there was an agreement to provide for insurance coverage against loss or damage to that equipment, this was not the only foreseen risk that the parties intended to insure against. This is clear from the language of the indemnity provision that applies to personal injury. Dravo was required to purchase insurance covering the same risks as the indemnity provision, including personal injury, and not just loss or damage to Dravo's equipment. Reading the contract as a whole supports the district court's interpretation of the insurance provision as requiring Dravo to purchase insurance to cover all risks arising out of the performance of the contract.
 
 
 17
 Dravo also seeks to have the district court's ruling reversed on equity grounds. L.C.C. Art. 2053 provides:
 
 
 18
 A doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the parties.
 
 
 19
 As we believe that the provision is not doubtful, there is no reason to apply this Article. A basic rule of Louisiana contract law is that where the intent of the parties can be determined through the plain meaning of the contract, no further inquiry is required. We hold that the contract was not ambiguous, and that the plain meaning should govern.
 
 
 20
 Dravo would also have us refuse to enforce the provision because it could be interpreted as an agreement to indemnify Gypsum for its own negligence, and therefore must be strictly construed against Gypsum. We disagree. An agreement to provide insurance is not the same as an agreement to indemnify. It is merely an agreement as to who will pay the premiums for insurance. An indemnity agreement requires the burdened party to evaluate, predict and/or control the risk. See Sovereign Insurance Co. v. Texas Pipe Line Co., 488 So.2d 982, 986 (La.1986). Here Dravo did not need to evaluate or predict the risk--it purchased insurance from Liberty for that purpose. There is no policy against insurance covering one's own negligence, so there is no reason to construe the provision against Gypsum.
 
 
 21
 The blanket additional insured clause under the Liberty Insurance policy provides liability coverage to the extent liability coverage is required by the Agreement between Gypsum and Dravo. Therefore, since Paragraph 12 requires Dravo to procure insurance to cover Gypsum against its liability for Woods's claims, the Liberty policy does cover those claims.
 
 III. GYPSUM'S CLAIMS
 
 22
 Both Gypsum and Dravo contended that the indemnity provisions of paragraph 13 of the Agreement require the other to indemnify it for any liabilities incurred by reason of work performed under the Agreement. The question of the interpretation of the indemnity clause in the Agreement need not be reached, however, as we have determined that the district court did not err in its interpretation of Paragraph 12 requiring insurance coverage, and the amount of damages payable to Jimmie Lee Woods is within the Liberty policy limits.
 
 
 23
 Gypsum also contends that the district court erred in refusing to impose penalties against Liberty for its refusal to defend or indemnify Gypsum. Under Louisiana law, an insurer who wrongfully denies a claim must pay statutory penalties. LSA R.S. 22:658 states in pertinent part:
 
 
 24
 A. All insurers issuing any type of contract, ... shall pay the amount of any claim due any insured, ... within sixty days after receipt of satisfactory proofs of loss from the insured, employee or any party in interest.
 
 
 25
 B. (1) Failure to make such payment within sixty days after receipt of such proofs and demand therefore, when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of ten percent damages on the total amount of the loss, payable to the insured, ... together with all reasonable attorney fees for the prosecution and collection of such loss,....
 
 
 26
 The provisions of this statute apply where the insured has been sued for liability by a third party. The statute also applies where the insurer has wrongfully refused to defend its insured in a liability suit. See Little v. Kalo Laboratories, 424 So.2d 1065 (La.App.2d Cir.1982), writ denied, 430 So.2d 79 (La.1983); Heimbaugh v. Fed. Ins. Co., 281 So.2d 839 (La.App. 1st Cir.1973); Frederick v. Electro-Coal Transfer Corp., 548 F.Supp. 83 (E.D.La.1982).
 
 
 27
 In this case, all parties have stipulated that demand was made on Liberty, so the only issue before the court is whether Liberty's refusal to defend or indemnify was arbitrary, capricious or unreasonable. The district court found that it was not, and we decline to reverse that decision.
 
 
 28
 Although some Louisiana courts have found an insurer's denial to be arbitrary or capricious when the insurer incorrectly interprets coverage, Boudreaux v. Fireman's Fund Ins. Co., 654 F.2d 447 (5th Cir.1981); Frederick v. Electro-Coal, supra; Chrysler Credit Corp. v. Dairyland Ins. Co., 491 So.2d 402 (La.App. 1st Cir.1986), writ denied, 494 So.2d 1178 (La.1986); Steadman v. Pearl Assurance Co., 242 La. 84, 134 So.2d 884 (1961), it is not apparent from the statute that the Louisiana legislature intended insurers to pay penalties whenever they err in their interpretation of coverage. In several cases, where there were serious questions concerning the underlying law or the facts which would trigger coverage, the Louisiana courts have not imposed penalties, despite a finding that the insured was covered by the policy in question. See Rudloff v. Louisiana Health Services and Indemnity Corp., 385 So.2d 767 (La.1980); Valladares v. Monarch Ins. Co., 282 So.2d 569 (La.App.4th Cir.1973); Cotlar v. Gulf Ins. Co., 318 So.2d 923 (La.App. 4th Cir.1975).
 
 
 29
 Liberty argues that the language of Section 658 relates to claims made by a named insured against its insurer, and as Gypsum is not a named insured in the Liberty policy, the statute should not apply. While it is not necessarily dispositive that Gypsum was not specifically a named insured, this case may be distinguished from those where an insurer wrongly interpreted its policy because this case arguably did not involve a policy interpretation, but an interpretation of the contract between Gypsum and Dravo. Because the language in the Agreement was not policy language written by Liberty, its refusal to defend or indemnify can be seen as less arbitrary than if the language governing coverage had been created by the insurer. After all, Dravo, who purchased the insurance also argued against coverage.
 
 
 30
 Because the statute is penal in nature it should be strictly construed, and should not be invoked merely because an insurer is cast in judgment under the policy. See, e.g., Headrick v. Pennsylvania Millers Mut. Ins. Co., 257 La. 1101, 245 So.2d 324, 326 (1971); Crawford v. Al Smith Plumbing, 352 So.2d 669, 673 (La.1977). The statute requires that the insurer's denial be arbitrary or capricious in order to impose penalties. It should not be invoked where the insurer had a "reasonable basis" for denying coverage or defense. See McGrew v. State Farm, 385 So.2d 1276, 1284 (La.App.1980). We will give some deference to the interpretation of a Louisiana statute by an experienced Louisiana District Judge. Accordingly, we do not find the district court's determination that Liberty acted in good faith and was not arbitrary and capricious to have been erroneous.
 
 IV. CONCLUSION
 
 31
 The district court was correct in its interpretation of paragraph 12 of the Agreement, and Dravo was required to purchase insurance to cover Gypsum for liability arising out of the performance of the Agreement. The Liberty policy was written to provide coverage for all persons and liabilities for which coverage was required under the Agreement, so Gypsum's liability to Jimmie Lee Woods was covered under the policy. Because the policy limits have not been exhausted, we need not reach the indemnity issues raised by the parties. The district court was not erroneous in its determination that Liberty was not arbitrary or capricious in denying coverage to Gypsum, so it did not err in its refusal to impose penalties against Liberty pursuant to LSA R.S. 22:658.
 
 
 32
 AFFIRMED.
 
 
 
 [1]
 The Agreement was entered into with Radcliff, a predecessor company to Dravo
 
 
 [2]
 The insurance policy from Liberty Mutual provides in pertinent part:
 It is agreed that, with respect to the insurance afforded by the policy under Coverage A and B of Part I, the "Persons Insured" provision is amended to include any person, organization, trustee or estate for whom the named insured has contracted in writing to procure liability insurance, provided:
 (a) The coverage afforded to such person or organization shall apply to only the extent required by the agreement, but in no event for broader coverage than afforded by this policy nor for limits of liability greater than the limit of the company's liability as stated in the Declarations.
 (b) The inclusion of more than one insured shall not operate to increase the limits of the company's liability.
 (c) This provision does not apply with respect to any person or organization for whom a separate liability insurance policy has been procured by the named insured while such policy remains in effect.