**HELMERICH & PAYNE IN-TERNATIONAL DRILL-ING CO., Appellant,**

v.

**SWIFT ENERGY COMPANY, Appellee.**

No. 14–04–00541–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Oct. 11, 2005.

Rehearing Overruled Dec. 1, 2005.

David Ledyard Countiss, Fred Lee Butler, Houston, for appellant.

Marcus R. Tucker, Robert Hays Etnyre, Houston, for appellee.

Panel consists of Chief Justice HEDGES and Justices FOWLER and FROST.

## OPINION

KEM THOMPSON FROST, Justice.

This is a contract construction case arising out of a dispute between parties to a

drilling contract. The contractor argues that, under its unambiguous terms, the drilling contract allocates responsibility for the loss in question to the operator. The operator relies on a line of federal cases that seek to give effect to both indemnity provisions and covenants to name another party as an additional insured. Faced with cross-motions for summary judgment, the trial court ruled in favor of the operator and rendered summary judgment against the contractor on the operator's breach-of-contract claim. We conclude that, even if Texas were to adopt the line of cases upon which the operator relies, these cases do not apply to the drilling contract in this case. Because the unambiguous language of the drilling contract allocates responsibility for this loss to the operator, we reverse the trial court's judgment and render judgment granting the contractor the declaratory relief it sought in its petition and denying the operator recovery on its counterclaim. We also remand this case to the trial court for further proceedings regarding the contractor's attorney's fees request.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The contractor, appellant Helmerich & Payne International Drilling Co. ("H & P"), and the operator, appellee Swift Energy Company ("Swift"), are parties to a Daywork Drilling Contract, dated July 27, 2000 (the "Drilling Contract"). The Drilling Contract initially covered the Kana # 1–H well in Fayette County, Texas. In December 2000, the parties agreed by letter that the terms and conditions of the Drilling Contract (with the exception of certain rates) would apply when H & P drilled the Post # 1 well in Goliad County, Texas. During H & P's operations at the Post # 1 well, drilling fluids spilled into the surrounding field. Swift had this spill cleaned up, incurring $155,078.86 in total costs relating to the spill ("Costs"). The

Drilling Contract requires H & P to maintain a Comprehensive General Liability ("CGL") insurance policy that includes Swift as an additional insured. H & P maintained a CGL policy issued by American Home Assurance Company (the "CGL Policy"). Swift made a claim for the Costs as an additional insured under the CGL Policy. American Home responded to the claim by agreeing that Swift had additional-insured status under the CGL Policy; however, American Home concluded it owed nothing because the claim fell within the $750,000 deductible per occurrence for pollution claims under the CGL Policy.

H & P refused to reimburse Swift for the Costs. Instead, H & P filed this suit as a declaratory-judgment action to determine its rights and obligations under the Drilling Contract. In its petition, H & P seeks a judgment declaring that the Drilling Contract allocates responsibility for all claims and damages resulting from the flow or spill of drilling fluids in the incident in question to Swift, that the Drilling Contract precludes Swift from recovering the Costs, and that Swift must defend and indemnify H & P in any action to recover the Costs. H & P also sought its reasonable and necessary attorney's fees under Chapters 37 and 38 of the Texas Civil Practice and Remedies Code.

Swift filed a counterclaim against H & P for breach of contract based on H & P's alleged failure to honor its purported obligation to reimburse Swift for the Costs. Swift also sought declaratory relief in this regard, as well as reasonable and necessary attorney's fees under Chapters 37 and 38 of the Texas Civil Practice and Remedies Code.

H & P and Swift filed cross-motions for summary judgment. The trial court granted Swift's motion and denied H & P's motion. The trial court rendered a final

judgment awarding Swift actual damages of $154,193.86, plus attorney's fees, court costs, and prejudgment and postjudgment interest. H & P now challenges that judgment and asks this court to reverse and render judgment granting H & P's motion for summary judgment.

## II. STANDARD OF REVIEW

■ A summary-judgment movant must establish its right to summary judgment by conclusively proving all elements of the movant's claim or defense as a matter of law. *See* TEX.R. CIV. P. 166a(c); *Havlen v. McDougall,* 22 S.W.3d 343, 345 (Tex.2000). When both parties move for summary judgment, each party must carry its own burden, and neither can prevail because of the failure of the other to discharge its burden.[1] *INAC Corp. v. Underwriters at Lloyd's,* 56 S.W.3d 242, 247 (Tex.App.-Houston [14th Dist.] 2001, no pet.). Because each party was a movant, the burden for each was the same: to establish entitlement to a summary judgment by conclusively proving all the elements of the claim or defense as a matter of law. *Id.* When both sides move for summary judgment and the trial court grants one motion and denies the other, the appellate court must review all summary-judgment evidence, determine all issues presented, and render the judgment that the trial court should have rendered. *FM Props. Operating Co. v. City of Austin,* 22 S.W.3d 868, 872 (Tex. 2000). This court reviews the summary-judgment evidence using familiar standards of review. *See Dolcefino v. Ran-*

*dolph,* 19 S.W.3d 906, 916 (Tex.App.-Houston [14th Dist.] 2000, pet. denied).

## III. ISSUE PRESENTED

In a single issue on appeal, H & P asserts the trial court erred in granting Swift's motion for summary judgment and in denying H & P's motion for summary judgment. H & P asserts, among other things, that under the unambiguous language of paragraph 14 of the Drilling Contract, Swift assumed all responsibility for the Costs, agreed to release and indemnify H & P for the Costs, and agreed that the provisions of paragraph 14.11 would take precedence over the provisions of paragraph 13 to the extent of any conflict.

## IV. ANALYSIS

The parties' arguments implicate several provisions of the Drilling Contract. The top of the first page of the Drilling Contract states, "**THIS AGREEMENT CONTAINS PROVISIONS RELATING TO INDEMNITY, RELEASE OF LIABILITY, AND ALLOCATION OF RISK.**" (emphasis in original). Paragraph 14 of the Drilling Contract contains the following relevant provisions:

> **RESPONSIBILITY FOR LOSS OR DAMAGE, INDEMNITY, RELEASE OF LIABILITY AND ALLOCATION OF RISK:**
>
> . . .
>
> 14.11 Pollution and Contamination: *Notwithstanding anything to the contrary contained herein,* except the provisions of Paragraphs 10 and 12, it is understood and agreed by and between

---

1. In its motion, H & P did not prove its reasonable and necessary attorney's fees; rather, it stated that it would prove those fees if the trial court ruled in its favor on the merits of its declaratory-judgment action. We conclude that, to the extent H & P's motion runs afoul of the requirement that the cross-motion must seek a final judgment, that

motion falls within the exception for declaratory-judgment relief. *See CU Lloyd's of Texas v. Feldman,* 977 S.W.2d 568, 569 (Tex.1998). Accordingly, this court has the ability to reverse and render judgment as to H & P's motion and to remand the issue of attorney's fees to the trial court. *See id.*

[H & P] and [Swift] that the responsibility for pollution and contamination shall be as follows:

(a) Unless otherwise provided herein, [H & P] shall assume all responsibility for, including control and removal of, and shall protect, defend and indemnify [Swift] from and against all claims, demands and causes of action of every kind and character arising from pollution or contamination, which originates above the surface of the land or water from spills of fuels, lubricants, motor oils, pipe dope, paints, solvents, ballast, bilge and garbage, except unavoidable pollution from reserve pits, wholly in [H & P's] possession and control and directly associated with [H & P's] equipment and facilities.

(b) *[Swift] shall assume all responsibility for,* including control and removal of, and *shall protect, defend and indemnify [H & P]* from and against all claims, demands, and causes of action *of every kind and character* arising *directly or indirectly* from all other pollution or contamination which may occur during the conduct of operations hereunder, including, but not limited to, that which may result from fire, blowout, cratering, seepage or any other uncontrolled flow of oil, gas, water or other substance, as well as the use or disposition of all drilling fluids, including, but not limited to, oil emulsion, oil base or chemically treated drilling fluids, contaminated cuttings or cavings, lost circulation and fish recovery materials and fluids. *[Swift] shall release [H & P] of any liability for the foregoing.*

. . .

14.13 Indemnity Obligation: Except as otherwise expressly limited herein, it is the intent of parties hereto that all releases, indemnity obligations and/or liabilities assumed by such parties under terms of this Contract, including, without limitation, Subparagraph 14.1 through 14.12 hereof, be without limit and without regard to the cause or causes thereof (including preexisting conditions), strict liability, regulatory or statutory liability, breach of warranty (express or implied), any theory of tort, breach of contract or the negligence of any party or parties, whether such negligence be sole, joint or concurrent, active or passive.[2]

(italics added).

Swift does not argue that the Costs arise from the pollution or contamination described in Paragraph 14.11(a), and the summary-judgment evidence shows that the Costs arise directly or indirectly from the pollution or contamination described in paragraph 14.11(b). Swift asserts, among other things, that its counterclaim against H & P does not implicate paragraph 14 of the Drilling Contract because this counterclaim is a separate and independent claim under paragraph 13 of the Drilling Contract, which reads in pertinent part:

*13. Insurance:*

At all times during the life of this Contract, and in addition to, and independent of, the insurance procurement obligations set forth in paragraphs 14.8 and 14.9, [H & P] shall procure and maintain insurance coverages of the types and in the amounts set forth on the attached and incorporated *Exhibit C.* All such policies shall be with insur-

**2.** Swift asserts that paragraph 14.13 is irrelevant to the issues at hand because the purpose of this paragraph is to satisfy the express negligence test, which is not an issue in this case. Nonetheless, even presuming that this was the main purpose of the parties regarding this paragraph, we cannot ignore this paragraph as to issues in this appeal to which its language relates.

ance company(ies) acceptable to [Swift]. [H & P] shall procure from each insurer providing coverage(s) required in *Exhibit C* a certificate of insurance confirming that such insurance is in full force and effect and providing that such insurance shall not be canceled or materially changed without thirty (30) days prior written notice to [Swift]. All policies required in *Exhibit C* shall provide: (a) that underwriters waive all rights of recovery and subrogation as against [Swift], its parent, subsidiaries, affiliates, and partnerships, and its and their respective officers, directors, employees, insurers, joint owners, co-lessees, joint venturers, [Swift's] contractors, subcontractors and contract consultants and their respective officers, directors and employees ("Operator Group"); (b) that such insurance shall be primary, with regard to obligations issued under this Contract, and shall not contribute with any insurance Operator Group, or any one of its members, may carry, regardless of the existence of any "other insurance" clauses in such insurance; (c) that *Operator Group shall be included as additional insureds,* except with respect to [H & P's] worker's compensation insurance; (d) *that all deductibles,* self-insured retentions, or coinsurance amounts *shall be the sole obligation of [H & P];* (e) that all coverages afforded to Operator Group shall be coextensive with the coverage provided to [H & P] or any named insured on such policy, and any language in such policies which purports to limit the coverage available to Operator Group shall be deemed deleted as to Operator Group, and (f) that the coverage afforded Operator Group as additional insureds under the policies listed in *Exhibit "C"* shall extend to

Operator Group for claims and liabilities expressly assumed by [H & P] and arising out of or relating to this Contract or work under this Contract. In the event that [H & P] chooses to carry insurance with greater limits than those required under *Exhibit C.,* Operator Group, as additional insureds, shall be entitled to the full limits of all insurance which [H & P] actually carries up to a maximum of $35,000,000.

(underlining in original; italics added).

Exhibit C to the Contract contains specifications for the various insurance policies, including the CGL Policy. Exhibit C requires that the CGL Policy include pollution coverage, and it does. Exhibit C does not contain any requirements regarding the deductible for the CGL Policy. The CGL Policy does not provide that all deductibles shall be the sole obligation of H & P.

H & P's alleged liability for the Costs is one arising out of H & P's operations. As to such liabilities, the CGL Policy provides additional-insured coverage when such coverage is required by written contract. The CGL Policy states that the insurer's obligation to pay damages under the policy applies only to the amount of damages in excess of the applicable deductible amount for that coverage. Under the CGL Policy, the deductible amount for pollution coverage is $750,000 per occurrence. American Home refused to pay any amount of the Costs because they did not exceed the $750,000 per-occurrence deductible.

 Neither party claims the Drilling Contract is ambiguous. Whether a contract is ambiguous is a question of law that we must decide by examining the contract as a whole in light of the circumstances present when the it was created.[3] *See*

---

**3.** The Drilling Contract states that Texas law governs the interpretation and enforcement of

that contract and the relationship between the parties. Neither H & P nor Swift has chal-

*Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996). If the written agreement is so worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous and we will construe it as a matter of law. *See American Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157–58 (Tex.2003). For reasons explained below, we conclude that, although the Drilling Contract may be susceptible to more than one interpretation, there is only one reasonable interpretation as to the issues presented in this appeal. Therefore, we construe the Drilling Contract as a matter of law. *See id.*

▆▆▆ In construing the Drilling Contract, our primary concern is to ascertain and give effect to the intentions of the parties as expressed in the written agreement. *Kelley–Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 464 (Tex.1998). To ascertain the true intentions of the parties to the contract, we examine the entire agreement in an effort to harmonize and give effect to all of the provisions of the contract so that none will be rendered meaningless. *MCI Telecomms. Corp. v. Texas Utils. Elec. Co.*, 995 S.W.2d 647, 652 (Tex.1999). We cannot rewrite the Drilling Contract or add to its language under the guise of interpretation. *See id.* at 161–62 (stating "we may neither rewrite the parties' contract nor add to its language"). Rather, we must enforce the Drilling Contract as written. *See Royal Indem. Co. v. Marshall*, 388 S.W.2d 176, 181 (Tex.1965).

In its counterclaim, Swift asserts that H & P breached a contract by refusing to reimburse Swift for the Costs; however, Swift does not specify the contract that it alleges H & P breached. In both its motion for summary judgment and in its appellate brief, Swift appears to be arguing that it is suing for breach of the CGL Policy, or in the alternative for breach of the Drilling Contract.[4] The trial court's judgment does not specify which contract it found H & P to have breached. We address, in turn, whether the trial court properly granted summary judgment based on an alleged breach of the CGL Policy and based on an alleged breach of the Drilling Contract.

### A. Did the trial court err to the extent it granted summary judgment based on H & P's alleged breach of the CGL Policy?

▆▆▆ Presuming, without deciding, that there is no general impediment to an additional insured under an insurance policy suing a named insured for payment of the policy deductible, Swift still would have to base its breach-of-contract claim on language in the CGL Policy that creates a contractual obligation for H & P to reimburse Swift for covered claims that are within the policy deductible.[5] *See Schaefer*, 124 S.W.3d at 157–58 (stating that

---

lenged the validity of this choice-of-law provision, and they both agree that Texas law applies.

**4.** For example, in its motion for summary judgment, Swift states that "[n]ow Swift is seeking coverage under the H & P policy which names Swift as an additional insured." On the other hand, Swift states later in the motion that "[u]nder the express terms of the contract at issue, H & P agreed to name Swift as an additional insured." Similarly, in its appellate brief, Swift asserts that "Swift's

claim is an insurance claim against H & P's policy issued by American Home and not a claim against H & P." Later in its brief, Swift asserts that "[e]ven if Swift's claim can be construed as a claim against H & P[,] Paragraph 14.11(b) only comes into play after H & P's additional insured obligation has been exhausted."

**5.** We also presume, without deciding, that the Costs fall within the pollution coverage of the CGL Policy.

insurance policies are construed under normal rules of contract construction). After reviewing the entire CGL Policy, we find no language that creates such an obligation. The CGL Policy states that the insurer's obligation to pay damages under the policy applies only to the amount of damages in excess of the applicable deductible amount for that coverage. The CGL Policy is silent as to how claims within the deductible are to be allocated between or among named insureds and additional insureds. The CGL Policy does not provide that all deductibles shall be the sole obligation of H & P. Under the unambiguous language of the CGL Policy, we conclude it imposes no contractual obligation on H & P to reimburse Swift for claims within the deductible amount.[6] *See id.* at 161–62 (holding that unambiguous language of insurance contract did not impose obligation to compensate insured for "diminished market value"). We conclude the trial court erred to the extent it granted summary judgment based on H & P's alleged breach of the CGL Policy.[7]

## B. Did the trial court err to the extent it granted summary judgment based on H & P's alleged breach of the Drilling Contract

and denied H & P's motion for summary judgment?

■ Swift also asserts that H & P breached the Drilling Contract by refusing to reimburse Swift for the Costs. Swift argues that H & P has an obligation to reimburse Swift for claims within the deductible of the CGL Policy based on paragraph 13 of the Drilling Contract. Paragraph 13 requires that H & P procure and maintain a CGL policy, and it requires that the CGL policy provide that all deductibles shall be the sole obligation of H & P. Paragraph 13, however, does not state that H & P must reimburse Swift for a claim within the deductible; therefore, any such obligation would be an implied obligation necessary to carry into effect the purposes of paragraph 13. For the purposes of our analysis, we presume, without deciding, that the language of paragraph 13, by itself, would impose an implied obligation on H & P to reimburse Swift for the Costs.[8]

Under paragraph 14.11 of the Drilling Contract, notwithstanding anything to the contrary contained in paragraph 13 of the Drilling Contract, Swift releases, assumes all responsibility for, and shall protect, defend, and indemnify H & P from and

---

**6.** In its letter denying Swift's claim, the insurer under the CGL Policy stated that "[H & P] will be responsible for the deductible." Even if we presume that the insurer meant to say that H & P will be solely responsible and liable to pay the Costs, this statement of the insurer's opinion as to H & P's liability does not affect our determination of whether H & P is liable to Swift for the Costs under either the unambiguous language of the CGL Policy or the Drilling Contract.

**7.** Furthermore, even if the CGL Policy otherwise would make H & P liable for the Costs, paragraph 14.13 of the Drilling Contract states that the parties intend that all releases, indemnity obligations, and/or liabilities assumed by the parties under paragraph 14.11 of the Drilling Contract, be without limit and

without regard to any theory of breach of contract. Under the analysis in section IV. B., *infra,* and based on this language in paragraph 14.13, H & P's alleged liability for the Costs still would be negated by paragraph 14.11 of the Drilling Contract.

**8.** Swift has not asserted a claim based on an alleged breach by H & P of its contractual obligation to procure and maintain a CGL policy that provides that all deductibles shall be its sole obligation, in which case its alleged damages would be based on an alleged ability to recover under the CGL Policy if the policy contained such language. In any event, even if Swift had asserted a claim based on H & P's alleged breach of this express obligation under paragraph 13, our analysis would not be significantly different.

against all claims of every kind and character arising, directly or indirectly, from pollution or contamination such as that which gave rise to the Costs.[9] Furthermore, paragraph 14.13 states, among other things, that the parties intend that all releases, indemnity obligations, and/or liabilities assumed by Swift under paragraph 14.11(b) shall be without limit. Even if the language of paragraph 13, by itself, would impose an obligation on H & P to reimburse Swift for the Costs, to this extent, this language would be contrary to Swift's release, assumption of all responsibility for, and indemnification of H & P against all claims of every kind and character arising, directly or indirectly, from pollution or contamination that gave rise to the Costs. Under the plain meaning of paragraph 14.11, Swift assumes all liability for the Costs and indemnifies H & P against all claims of every kind and character arising, directly or indirectly, from pollution or contamination that gave rise to the Costs, notwithstanding any obligation to reimburse Swift for the Costs that may be contained in paragraph 13 of the Drilling Contract.

■ When parties use the clause "notwithstanding anything to the contrary contained herein" in a paragraph of their contract, they contemplate the possibility that other parts of their contract may conflict with that paragraph, and they agree that this paragraph must be given effect regardless of any contrary provisions of the contract. *See Cleere Drilling Co. v. Dominion Explor. & Prod., Inc.,* 351 F.3d 642, 649 & n. 13 (5th Cir.2003) (applying Texas law to drilling contract containing language substantially similar to paragraph 14.11 of the Drilling Contract and stating that the "notwithstanding anything to the contrary contained herein" clause constitutes an express declaration by the parties that this paragraph of the drilling contract supersedes all other provisions of the contract[10]); *Gulf Oil Corp. v. Southland Royalty Co.,* 496 S.W.2d 547, 551 (Tex.1973) (stating that section of lease containing "anything in this lease to the contrary notwithstanding" clause gave that section of the lease priority over any contrary lease provision); *N.M. Uranium, Inc. v. Moser,* 587 S.W.2d 809, 814–15 (Tex.Civ.App.-Corpus Christi 1979, writ ref'd n.r.e.) (stating that court had to give effect to one provision of a lease regardless of a conflicting provision because the former provision contained an "any provision herein to the contrary notwithstanding" clause); *Ridgewood Timber, Inc. v. GMAC Commercial Mort. Corp.,* No. 05–99–00054–CV, 1999 WL 1140821, at *4 (Tex.App.-Dallas, Dec.14, 1999, no pet.) (not designated for publication) (stating that, even if two contract provisions conflicted, the one with the "notwithstanding anything to the contrary contained herein" clause would take precedence). Accordingly, we conclude that, under the unambiguous language of the Drilling Contract, Swift has released H & P from any obligation to pay the Costs, assumed all responsibility for the Costs, and indemnified H & P against all claims of every kind and character arising, directly or indirectly, from pollution or contamination that gave

---

9. Paragraph 14.11 excludes paragraphs 10 and 12 from the "notwithstanding anything to the contrary contained herein" clause; however, these provisions do not affect our analysis, and paragraph 13 is not included in this exception to the "notwithstanding" clause.

10. Like paragraph 14.11 of the Drilling Contract, the drilling contract in *Cleere Drilling Co.* excluded two parts of the drilling contract from the scope of the "notwithstanding" clause; however, as in this case, the two excluded provisions were not relevant to the issues at hand.

rise to the Costs.[11]

Swift asserts that H & P's obligations under paragraph 13 are separate and independent and do not conflict with paragraph 14.11 because they do not upset the risk-allocation scheme in the Drilling Contract. Swift argues that it is not asserting a direct claim against H & P for pollution loss; rather, Swift is asserting its right to insurance coverage against H & P as an additional insured under the CGL Policy. To the extent Swift is referring to an alleged claim against H & P for breach of the CGL Policy, this claim fails for the reasons stated above. To the extent this argument refers to Swift's claim for alleged breach of the Drilling Contract, we conclude this argument lacks merit. Imposing an obligation on H & P under paragraph 13 to reimburse Swift for the Costs would be contrary to the risk-allocation scheme in the Drilling Contract. Swift is suing H & P for an alleged breach of an obligation under paragraph 13 that would impose responsibility on H & P for a liability that Swift assumed under paragraph 14.11. Presuming such an obligation exists under paragraph 13, it is contrary to paragraph 14.11 and therefore, it is negated by paragraph 14.11's "notwithstanding anything to the contrary contained herein" clause. Although the obligations under paragraph 13 may be separate and inde-pendent, as Swift asserts, this status does not remove the contractual prohibition barring paragraph 13 from imposing obligations contrary to paragraph 14.11. The parties agreed that paragraph 14.11 must be given effect regardless of any contrary obligations imposed by paragraph 13, and paragraph 13's separate and independent nature does not alter this agreement.[12]

Swift also asserts that construing paragraph 14.11 to preclude its right to reimbursement for the Costs under paragraph 13 would render paragraph 13 meaningless. We disagree. The CGL Policy provides coverage for various risks that fall outside the scope of paragraph 14.11(b), including but not limited to risks described in paragraph 14.11(a). Therefore, our construction of the Drilling Contract does not render meaningless H & P's agreement in paragraph 13 to procure and maintain a CGL policy which provides that (1) this policy is primary, (2) Swift is an additional insured, (3) all deductibles shall be H & P's sole obligation, and (4) the coverages afforded Swift are coextensive with the coverage provided to H & P. Furthermore, any alleged obligation to reimburse Swift for claims within the deductible is likewise not rendered meaningless; it simply does not apply to claims within the scope of paragraph 14.11(b).[13] On the other hand,

---

11. Having ruled in H & P's favor on this basis, we need not and do not address H & P's argument that any obligation it might have to Swift for reimbursement of the Costs is limited by paragraph 13(f) to claims and liabilities "expressly assumed" by the H & P. Likewise, we need not and do not address the applicability of the "circuity of action" doctrine urged by H & P.

12. In regard to its "separate and independent obligation" argument, Swift cites a Texas Supreme Court case holding that an agreement to name a party as an additional insured is not subject to the requirements of the Texas Oilfield Anti–Indemnity Statute. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 127.001, *et seq.* (Texas Oilfield Anti–Indemnity Statute); *Getty Oil Co. v. Ins. Co. of N. Am.*, 845 S.W.2d 794, 803–05 (Tex.1992). The *Getty Oil Co.* opinion construing the scope of the Texas Oilfield Anti–Indemnity Statute does not affect our construction of the Drilling Contract in this case. No party in this cases asserts that any indemnity in the Drilling Contract is void under the Texas Oilfield Anti–Indemnity Statute.

13. It should also be noted that, if, though not required by the Drilling Contract, H & P procured insurance covering the Costs, our holding today would not prevent Swift from

to adopt Swift's interpretation of the Drilling Contract would render meaningless the "notwithstanding anything to the contrary contained herein" clause in paragraph 14.11. *See Ridgewood Timber, Inc.,* 1999 WL 1140821, at *4 (stating that one party's interpretation of the contract at issue would render the "notwithstanding" provision meaningless).

Swift also cites three cases holding that the language of additional-insured provisions in the contracts at issue were not tied to the validity of the indemnity provisions of the contract and therefore were not affected by the alleged invalidity of the indemnity provisions under applicable anti-indemnity statutes. *See Mid-Continent Cas. Co. v. Swift Energy Co.,* 206 F.3d 487, 492–95 (5th Cir.2000); *LeBlanc v. Global Marine Drilling Co.,* 193 F.3d 873, 875 (5th Cir.1999); *Lloyd's of London v. Oryx Energy Co.,* 142 F.3d 255, 258–60 (5th Cir.1998). Swift cites these cases in part for the proposition that paragraph 13 is a separate and independent obligation; however, as discussed above, this characteristic does not remove paragraph 13 from the scope and operation of the "notwithstanding" clause in paragraph 14.11. Even if, as Swift asserts, these cases indicate that the parties had to clearly state their intent that paragraph 14.11 limit paragraph 13 to the extent of any conflict, the parties did so through the "notwithstanding" clause. These three cases do not involve the issues of contract construction that we face in this case, and they do not involve a provision containing a "notwithstanding" clause. There is nothing in these cases that changes our analysis in this case.

Swift also argues in the alternative that paragraph 14.11 does not come into play until after all of Swift's "additional insured coverage" under paragraph 13 is exhausted. Swift bases this argument on four decisions from the United States Court of Appeals for the Fifth Circuit. *See Tullier v. Halliburton Geophysical Servs., Inc.,* 81 F.3d 552 (5th Cir.1996); *Woods v. Dravo Basic Materials Co.,* 887 F.2d 618 (5th Cir.1989); *Klepac v. Champlin Petroleum Co.,* 842 F.2d 746 (5th Cir.1988); *Ogea v. Loffland Bros. Co.,* 622 F.2d 186 (5th Cir. 1980), each of which we address.[14]

In *Ogea,* the Fifth Circuit applied Louisiana law in interpreting a drilling contract that contained an indemnity as well as a covenant by the indemnitee to name the indemnitor as an additional insured under insurance policies providing coverage for matters within the scope of the indemnitor's indemnity obligation. *See Ogea,* 622 F.2d at 188–90. The *Ogea* court held that, reading these two provisions in conjunction with each other, the indemnitee first must exhaust the insurance it agreed to obtain before obtaining contractual indemnity against the indemnitor. *See id.* at 188–90. The relevant provisions of the drilling contract in *Ogea* did not contain any "notwithstanding" clause and the relevant indemnity clause did not contain the broad language in paragraph 14.11 of the Drilling Contract (for example, "assume all responsibility for" and "without limit"). *See id.*

In *Klepac,* the Fifth Circuit interpreted a drilling contract without specifying

recovering against the insurer under the policy providing coverage.

**14.** Swift asserts that this court recently acknowledged the validity and accepted the holding of the *Ogea* case. *See Nabors Corp. Servs., Inc. v. Northfield Ins. Co.,* 132 S.W.3d 90, 98–99 (Tex.App.-Houston [14th Dist.]

2004, no pet.). We disagree. In *Nabors,* this court simply acknowledged the existence of the *Ogea* decision and decided that it was not on point. *See id.* This court did not conclude that *Ogea* was the rule under Texas law. *See id.*

which jurisdiction's law applied. Furthermore, although the court did not quote the indemnity provision in question, the court did not mention that the relevant provisions of the contract contain a "notwithstanding" clause or that the relevant indemnity provision contained broad language like that in paragraph 14.11 of the Drilling Contract. *See Klepac,* 842 F.2d at 746–48.

In *Woods,* the Fifth Circuit interpreted a contract under Louisiana law. *See Woods,* 887 F.2d at 619–22. The insurance clause at issue in *Woods* did not contain a "notwithstanding" clause, and, although the court did not quote the entire indemnity provision in question, the court did not mention that the indemnity contained a "notwithstanding" clause or that it contained broad language like that in paragraph 14.11 of the Drilling Contract. *See id.* Although the indemnity provision at issue in *Woods* stated that nothing in that provision should be construed to affect or limit any other provision of the contract, the insurance provision at issue also stated that nothing in that provision should be construed to affect or limit any other provision of the contract. *See id.* at 619–20. The *Woods* court did not discuss the effect of these clauses; however, this language is not the equivalent of having a "notwithstanding" clause in the indemnification/assumption of liability provision and no such clause in the insurance provision. *See id.* In fact, these two clauses support the application of the *Ogea* rule because they indicate the parties intended both the insurance and the indemnity provisions to be given effect to the fullest extent possible.

In *Tullier,* the Fifth Circuit interpreted a contract under general maritime law. *See Tullier,* 81 F.3d at 552–55. The insurance clause at issue in *Tullier* did not contain a "notwithstanding" clause. The *Tullier* court did not quote the entire in-

demnity provision in question, but the court did not mention that the indemnity contained a "notwithstanding" clause or that it contained broad language like that in paragraph 14.11 of the Drilling Contract. *See id.*

Presuming, without deciding, that Texas would adopt the *Ogea* rule, we nonetheless conclude that this rule does not apply to the facts of this case based on the "notwithstanding" clause and the broad assumption of all liability language contained in paragraph 14.11 of the Drilling Contract. In the *Ogea* line of cases, courts seek to reconcile to the greatest extent possible indemnification and insurance clauses. Unlike those cases, in the case at hand, the parties agreed on how to reconcile the conflict between paragraph 14.11 and paragraph 13—they agreed that paragraph 14.11 controls to the extent of any conflict. *See Cleere Drilling Co.,* 351 F.3d at 649 & n. 13; *Gulf Oil Corp.,* 496 S.W.2d at 551; *N.M. Uranium, Inc.,* 587 S.W.2d at 814–15; *Ridgewood Timber, Inc.,* 1999 WL 1140821, at *4.

We must enforce the Drilling Contract as written; we cannot question the wisdom of the parties' agreement or rewrite the relevant provisions under the guise of interpretation. *See Schaefer,* 124 S.W.3d at 161–62; *Royal Indem. Co.,* 388 S.W.2d at 181. Under the unambiguous language of paragraph 14.11, Swift assumes all liability for the Costs and indemnifies H & P against all claims of every kind and character arising, directly or indirectly, from the pollution or contamination that gave rise to the Costs, notwithstanding any obligation to reimburse Swift for the Costs that may be contained in paragraph 13 of the Drilling Contract. Accordingly, under the applicable standard of review, the trial court erred in granting Swift's motion for summary judgment and in denying H & P's motion for summary judgment. The trial

court should have granted H & P's motion and rendered a declaratory judgment as follows:

- Under the Drilling Contract, Swift is responsible for all claims and damages resulting from the flow or spill of the drilling fluids in this matter, including the costs of cleaning up the spill.
- In the Drilling Contract, Swift released H & P from any liability for the spill of the drilling fluids in this matter, including the costs of cleaning up the spill.
- Swift is precluded from recovering the clean up costs from H & P, even if Swift's claim is cast as one for coverage under the CGL Policy.
- Swift is required to defend and indemnify H & P in any action to recover from H & P the clean up costs, even if cast as payment of a deductible.

## V. CONCLUSION

Under the unambiguous language of the Drilling Contract, Swift assumed all liability for the Costs and indemnified H & P against all claims of every kind and character arising directly or indirectly from the pollution or contamination that gave rise to the Costs, without limit and notwithstanding any obligation to reimburse Swift for the Costs that may be contained in paragraph 13 of the Drilling Contract. Therefore, we conclude that the trial court erred in granting Swift's motion for summary judgment and in denying H & P's motion for summary judgment. Accordingly, we sustain H & P's appellate issue. We reverse the trial court's judgment, and we render judgment denying Swift's motion for summary judgment, granting H & P's motion for summary judgment, ordering that Swift take nothing as to its counterclaim, and making the four declarations contained in section IV. B., *supra.* We also remand this case to the trial court for further proceedings so that the trial court may address H & P's attorney's fees request.